J-A16007-21

2021 PA Super 167

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| AMY BURKE | : | |
| | : | |
| Appellant | : | No. 496 MDA 2020 |

Appeal from the Order Entered March 10, 2020
in the Court of Common Pleas of Luzerne County,
Criminal Division at No(s): CP-40-CR-0004059-2019.

BEFORE: KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

OPINION BY KUNSELMAN, J.: **FILED: AUGUST 19, 2021**

In this interlocutory appeal by permission, Amy Burke challenges the order denying her pretrial Petition for a Writ of *Habeas Corpus*.[1] Ms. Burke, the Commonwealth, and trial court agree the magisterial district court and trial court violated **Commonwealth v. McClelland**, 233 A.3d. 717, (Pa. 2020) ("**McClelland II**"). Those courts relied exclusively on hearsay evidence at the preliminary hearing and *habeas corpus* hearing, respectively, to find that the Commonwealth established its *prima facie* case against Ms. Burke

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Initially, this Court quashed Ms. Burke's appeal as premature. She appealed to the Supreme Court of Pennsylvania, which vacated the quashal order and remanded "for consideration in light of **Commonwealth v. McClelland**, 233 A.3d. 717, 2020 WL 4092109 (Pa. July 21, 2020)." **Commonwealth v. Burke**, 239 A.3d 1086 (Pa. 2020). "Exceptional circumstances" necessitating immediate review of the trial court's order exist. **Commonwealth v. Hess**, 414 A.2d 1034, 1048 (Pa. 1980); 42 Pa.C.S.A. § 702(b). We therefore grant Ms. Burke's petition for an interlocutory appeal by permission.

and to hold her case over for trial.[2]  *See* Ms. Burke's Brief at 8; Commonwealth's Brief at 2; Trial Court Opinion, 12/21/20, at 2.  Thus, the only remaining issue is whether we should (a) discharge Ms. Burke without prejudice for the Commonwealth to recharge her within the unexpired statute of limitations or (b) remand for a supplemental *habeas corpus* hearing in the trial court.

Determining the appropriate remedy for a Wirt of *Habeas Corpus* raises a pure question of law.  Therefore, "our standard of review is *de novo*, and our scope of review is plenary."  **McClelland II** at 732.

The Commonwealth claims the proper remedy is for us to vacate the appealed-from order and remand for a supplemental *habeas corpus* hearing in the trial court.  This would permit the prosecution to establish a *prima facie* case via firsthand testimony and, thereby, rectify its **McClelland II** violation. **See** Commonwealth's Brief at 3.  The Commonwealth cites no law to support this result.  Instead, it relies upon arguments of policy, judicial economy, and prosecutorial efficiency.  **See id.**

In its view, if we discharge Ms. Burke from custody, we "would prolong the final resolution of the matter."  **Id.**  This "discharge would entail the Commonwealth filing a new complaint, bail being reset, and a new preliminary

---

[2] The Commonwealth charged Ms. Burke with one count under 18 Pa.C.S.A. § 6301(a)(1)(1) (corruption of minors).

hearing being scheduled. After the preliminary hearing, [Ms. Burke] may again file a *habeas* petition." **Id.** On the other hand, if we remand for a supplemental *habeas* hearing, the Commonwealth argues we "alleviate the need for a new arrest and preliminary hearing." **Id.**

Additionally, the Commonwealth contends that the result of discharge is unfair, because the jurisprudence regarding hearsay at preliminary and pre-trial *habeas* hearings changed during the pendency of this appeal. "At the time of [Ms. Burke's] preliminary and *habeas* hearing, the Commonwealth was permitted to establish a *prima facie* case by presenting only hearsay evidence." **Id.** at 4 (citing **Commonwealth v. Ricker**, 120 A.3d 349 (Pa. Super. 2015), *overruled by* **McClelland II**, **supra**, and **Commonwealth v. McClelland**, 165 A.3d 19 (Pa.Super. 2017) ("**McClelland I**"), *reversed*, **McClelland II**, **supra**,). The Commonwealth suggests it "should not be overly penalized for following the rules as they existed [prior to **McClelland II**] by discharging [Ms. Burke]. Instead, the parties should be put back into their relative positions at the point where the rules changed." **Id.**

By contrast, Ms. Burke argues we must discharge her, as a matter of law. The trial court agrees with her. It opined, "Because the Commonwealth failed to establish a *prima facie* case, the Petition for Writ of *Habeas Corpus* . . . must be granted and the charge of corruption of minors dismissed." Trial Court Opinion, 12/21/20, at 3. As persuasive authority, Ms. Burke and the trial court rely upon **Commonwealth v. Montanez**, 279 MDA 2017, 2020 WL 6581313 (Pa. Super. 2020) (non-precedential decision). **Montanez** applied

*McClelland II*, reversed an order denying *habeas corpus* relief, and discharged the defendant. Ms. Burke asks us to follow *Montanez*.

Notably, she also cites *Commonwealth v. Dolan*, 240 A.3d 1291 (Pa. Super. 2020) ("*Dolan III*"). There, this Court affirmed an order that "granted [Dolan's] pretrial Writ of *Habeas Corpus* and remanded [to the magisterial district court] for a new preliminary hearing." *Commonwealth v. Dolan*, 167 A.3d 46, 47 (Pa. Super. 2017) ("*Dolan I*"), *reversed*, 237 A.3d 986 (Pa. 2020) ("*Dolan II*"). As such, *Dolan III* affirmed a *habeas corpus* remedy of remand for a preliminary hearing *de novo*.

Under the doctrine of *stare decisis*, a "three-judge panel of this Court cannot overrule another." *Commonwealth v. Taggart*, 997 A.2d 1189, 1201 n.16 (Pa. Super. 2010); *see also Commonwealth v. Taylor*, 649 A.2d 453, 455 (Pa. Super. 1994). Thus, we must determine whether the decision in *Dolan III* to affirm the order remanding to the magisterial district court binds this panel.

*Stare decisis* "only applies to issues actually raised, argued, and adjudicated, and only where the decision was necessary to the determination of the case. The doctrine is limited to issues litigated and necessarily decided, it does not apply to *dicta* or *obiter dicta.*" *In re L.J.*, 79 A.3d 1073, 1081 (Pa. 2013). As we explain, the disposition from *Dolan III* is not *stare decisis*.

First, the *Dolan III* Court did not mention that the appealed-from order directed remand, rather than discharge, given what appears in the opinion's second footnote. That footnote provides:

- 4 -

Our order affirming the trial court's interlocutory order does not preclude the Commonwealth from refiling charges against Appellee Dolan and proceeding with a new preliminary hearing. As the Supreme Court majority in **McClelland [II]** observed under circumstances virtually identical to those in the instant case:

Dismissal of charges and discharge of the accused for failure to establish a *prima facie* case at the preliminary hearing is an interlocutory order, **see Commonwealth v. La Belle**, 531 Pa. 256, 612 A.2d [418, 420 (Pa. 1992), which does not implicate double-jeopardy concerns. **See Liciaga v. Court of Common Pleas of Lehigh Co**., 523 Pa. 258, 566 A.2d 246, 267 (1989). Because the Commonwealth relied on a reasonable, yet imprecise reading of Rule 542, we discharge McClelland without prejudice to the Commonwealth to refile charges and proceed with a new preliminary hearing.

**McClelland [II]**, 233 A.3d at 736.

**Dolan III**, 240 A.3d at 1293 n.2 (some punctuation omitted).

From this, it appears the **Dolan III** Court believed it was discharging the defendant and thereby forcing the Commonwealth to refile its charges. However, the **Dolan III** Court, by affirming the trial court order (rather than modifying it), actually remanded for a new preliminary hearing.

Second, **Dolan III** merely followed the disposition of **McClelland II**, *i.e.*, "discharge [of the defendant] without prejudice to the Commonwealth to refile charges and proceed with a new preliminary hearing." **McClelland II** at 736. Thus, **Dolan III** did not consider, much less decide, the proper remedy for when the Commonwealth fails to make its *prima facie* case on all

charges.[3] The issue of the appropriate *habeas corpus* remedy was not raised, argued, and adjudicated in **Dolan III**, nor was it "necessary to the determination of the case." **In re L.J.**, 79 A.3d at 1081. Hence, the **Dolan III** disposition does not bind this panel under the doctrine of *stare decisis*.

Having considered and rejected **Dolan III**, we turn to **Montanez**, *supra*, an unpublished decision of this Court, upon which Ms. Burke and the trial court rely to support the remedy of discharge. Notably, the **Montanez** Court also did not consider whether the discharge of the defendant was the appropriate remedy. Instead, it cited **McClelland II**, *supra*, to "reverse the trial court's order denying Appellant's Petition for Writ of *Habeas Corpus* and dismiss the charges against him." **Montanez**, *supra* (Slip Opinion at 5).

We note that in **McClelland II**, the Supreme Court of Pennsylvania ordered the discharge of the defendant, where the Commonwealth failed to make its *prima facie* case in circumstances identical to the matter now at bar. Without pausing to consider remedial alternatives, the **McClelland** Court said, "We therefore reverse the Superior Court's decision below and expressly disapprove **Ricker**, *supra*. The appellant is discharged without prejudice." **McClelland**, 233 A.3d at 736. Given the disposition of discharge, without any discussion by the court, this remedy seems obvious – a foregone conclusion.

---

[3] Here, Ms. Burke only faces one charge. Thus, the Commonwealth did not make its *prima facie* case on any of its charges. However, we neither consider nor decide the *habeas corpus* remedy when, after bringing multiple charges against a defendant, the Commonwealth makes its *prima facie* case on some, but not all, charges.

History reveals that, in granting a *habeas corpus* petition, discharge of defendants has been the remedy for generations upon generations of jurists. "*Habeas corpus* is a high prerogative, or prerogative common-law writ of ancient origin." 39 C.J.S. § 2 at 460. Blackstone dubbed it the "great and efficacious writ in all manner of illegal confinement." COMMENTARIES ON THE LAWS OF ENGLAND (1765–1769), Chicago U.P. at 129–137 (1979 ed.). "The Writ of *Habeas Corpus*, also known as the Great Writ of Liberty, has its roots in the *Magna Carta* of 1215 . . . [and it] was used to compel the production of the prisoner to ascertain the cause of his or her detention." Okpaluba, *The Common Law Remedy of Habeas Corpus Through the Prism of a Twelve-Point Construct*, Erasmus L. Rev., 2 at 2, (forthcoming 2021). In 1679, Parliament codified the writ by passing the *Habeas Corpus* Act, 31 Car. 2, "securing . . . **speedy relief** from all unlawful imprisonment." BLACK'S LAW DICTIONARY at 825 (10th. Ed. 2009) (emphasis added).

The writ derives its name "from the significant words which it contained when writs issued by the English courts were in Latin." 39 C.J.S. § 1 at 459. "The term '*habeas corpus*' is a generic one and there are several varieties of this writ, but the one usually referred to as the writ of *habeas corpus* [especially in criminal matters] is the writ of *habeas corpus ad subjiciendum*."[4] *Id.* at 459-60. This means, "Have the body [of the citizen] to subject" your

---

[4] For other types of writs of habeas corpus, see 18 STANDARD PA. PRACTICE 2d § 98:9, 98:10, 98:11.

reasons for imprisoning her to judicial review.[5]  This type of Writ of *Habeas Corpus* most often remedies the "restraint upon individual liberty . . . inherent in incarceration . . . ."  18 STANDARD PA. PRACTICE 2d § 98:2 at 219.

After the American Revolution, "the right of the citizen to his remedy of *habeas corpus* in case of unlawful imprisonment was recognized and preserved by constitutional provisions . . . ."  39 C.J.S. § 4 at 463.   In fact, the Constitution of the Commonwealth of Pennsylvania dictates that "the privilege of the Writ of *Habeas Corpus* shall not be suspended, unless when in case of rebellion or invasion the public safety may require it."  Pa. Const. art. I, § 14.

To effectuate this provision, the General Assembly of Pennsylvania has enacted certain statutes.   **See** 42 Pa.C.S.A. §§ 6501-6505.   The right to *habeas corpus* relief extends to "any person restrained of his liberty within this Commonwealth . . . ."  42 Pa.C.S.A. § 6503(a).

---

[5] The writ more fully directed, "*Praecipimus tibi, quod* **Corpus** *A.B. in prisona nostra sub custodia tua detent. ut dicitur una cum causa detentionis suae . . .* **Habeas** *coram nobis . . .* **ad subjiciendum et recipiendum** *ea quae curia nostra de ea adtunc, et ibidem ordinari contigerit in hac parte et hoc nullatenus, omittatis periculo incumbente, et habeas ibi hoc breve.*"  Hurd, 2 TREATISE ON THE RIGHT OF PERSONAL LIBERTY, AND ON THE WRIT OF *HABEAS CORPUS* AND THE PRACTICE CONNECTED WITH IT § V(1) at 232 (1858) (quoting 2 INST. 53; *Term P.C.*, 354) (emphasis by Hurd).  This roughly translates to, "**You Shall Have** at our Court the **Body** of A.B., which is in our prison under your arrest detained, as alleged [in the petition for this writ], together with the day and cause of his taking and detention . . . **to submit and to receive** what our Court shall then consider and order in this regard; fail you in this at your peril; and you shall [also] have this writ there."

These statutes, however, do not confer any power on our courts to grant *habeas corpus* relief that the legislature might annul. The power to grant *habeas corpus* relief is innate in our trial courts, because it arises from the ancient common law, not statute.

As the Supreme Court of Pennsylvania recognized decades ago, the courts of common pleas have "full power, under this common-law authority over inferior magistrates, and also by virtue of being a justice of the peace, to require the Commonwealth to produce evidence proving a *prima facie* case against the" incarcerated individual. **Com. ex rel. Levine v. Fair**, 146 A.2d 834, 845 (Pa. 1958) (quoting trial court opinion with approval). Indeed, "There is no locked door which may not be opened by the key of *habeas corpus* . . . there is no enclosure which may not be entered by the person bearing this Writ," the Great Writ of Liberty. **Id.** at 846.

"Nor does one need to search through the books for a precedent for its application." **Id.** "Although the complexities of modern life are constantly expanding, and are now even traveling into spheres of conduct and human-relationship reaching into the very spaces of the infinite, the principle of the right to untrammeled freedom of action is still the fixed star in the sky of the English-speaking world." **Id.** "Hence, no matter what may be the situation or how involved the circumstances, any person who claims he is illegally imprisoned or restrained of his liberty may have such claim inquired into by a competent court, and, if his claim is found to be well grounded, **he will be discharged and freed of such restraint.**" **Id.** (emphasis added).

This pronouncement of the Supreme Court of Pennsylvania on the appropriate remedy of *habeas corpus* petition resolves this dispute. Thus, even if the Commonwealth's arguments in support of remand – *i.e.*, judicial economy and prosecutorial efficiency – convinced us otherwise (and they do not), we have no authority to overrule **Levine**, **supra**.

No matter how inconvenient it may be for the Commonwealth to recharge Ms. Burke, to rearrest her, to have a court reset her bail, and to redo her preliminary hearing, our state constitution and the Writ of *Habeas Corpus* do not concern themselves with conveniences of the Commonwealth. Indeed, these bulwarks of Pennsylvania law exist to burden and to check the Commonwealth in its prosecutions of citizens, whom we presume innocent unless and until proven otherwise beyond a reasonable doubt. Thus, it is the rights and liberties of the people which Article I, § 14 protects from executive and legislative overreach.

For centuries, courts of this Commonwealth and England have used the Writ of *Habeas Corpus* "to determine whether a petitioner is **entitled to an immediate release** from an unlawful confinement." **Commonwealth ex rel. Powell v. Rosenberry**, 645 A.2d 1328, 1330 (Pa. Super. 1994) (emphasis added). Rather than grant Ms. Burke immediate release, the Commonwealth's request for a new *habeas corpus* hearing would effectively suspend her privilege of the Writ of *Habeas Corpus* for the duration of the remand and new hearing. Article I, § 14 of our state constitution forbids this result.

Today, we reaffirm the principles of justice dating back to *Magna Carta*, the corresponding common law of *habeas corpus* relief, and the ancient line of unbroken precedents applying them. Thus, we discharge Ms. Burke.[6]

Order reversed. Ms. Burke discharged from custody without prejudice to the Commonwealth to refile its charge.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/19/2021

---

[6] To the extent the trial court's order in **Commonwealth v. Dolan**, 240 A.3d 1291 (Pa. Super. 2020) ("**Dolan III**") directed a remand for a new preliminary hearing, we expressly disapprove of that result.