J-A21017-23

2023 PA Super 272

| | | |
|---|---|---|
| WESTMINSTER AMERICAN INSURANCE COMPANY A/S/O ANDROULLA M. TOFALLI | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | No. 538 EDA 2023 |
| AMY S. BOND A/K/A AMY S. SAFIN AND AMY S. BOND A/K/A AMY S. SAFIN T/A BLONDIE'S SALON | : : : : | |

Appeal from the Order Entered February 3, 2023
In the Court of Common Pleas of Monroe County Civil Division at No(s):
161-CV-2021

BEFORE:  BENDER, P.J.E., DUBOW, J., and NICHOLS, J.

CONCURRING OPINION BY BENDER, P.J.E.:       **FILED DECEMBER 26, 2023**

I am constrained by current case law to agree with the Majority's conclusion that, because the Leases did not obligate the Landlord to obtain fire insurance on the Property, the Tenants had no reasonable expectation that they were co-insureds on the Landlord's insurance policy.  However, I write separately to voice my concerns about our case law and the approach Pennsylvania employs to determine whether a landlord's insurer may pursue a subrogation action against a negligent tenant.  I also encourage our Court, *en banc*, or our Supreme Court to review this issue*.*

In **Joella v. Cole**, 221 A.3d 674 (Pa. Super. 2019), our Court outlined three approaches jurisdictions have taken to resolve the issue of whether a

landlord's insurer can file a subrogation claim against a tenant when the tenant negligently caused damage to the landlord's property. We explained:

> The first approach is the pro-subrogation approach in which a landlord's insurer can bring a subrogation claim against a negligent tenant absent an express provision in the lease to the contrary. Because the tenant is not an express or implied co-insured, the insurance company can maintain a suit against the tenant for property losses caused by the tenant's conduct. Courts that have adopted the pro-subrogation approach emphasize that a tenant has the responsibility to exercise ordinary care and should not be exculpated from the consequences of his own negligence unless the landlord and the tenant have expressly agreed that the tenant will not be held liable for loss resulting from the tenant's negligence:
>
> > [I]t is the duty of the tenant to exercise ordinary care, in the use of the leased premises or property, not to cause any material and permanent injury thereto over and above the ordinary wear and tear, and … he is liable to the landlord in damages for any such injury unnecessarily resulting from his wrongful acts or his failure to exercise such care.
>
> *** 
>
> The second approach is the anti-subrogation approach known as the "Sutton Rule." This approach is named after ***Sutton v. Jondahl***, 532 P.2d 478 (Ok.Civ.App. 1975), a case where the ten-year-old son of a tenant took an electric popcorn popper to his bedroom to heat up some chemicals that caused the curtains to catch on fire, causing $2,382.57 in damages. In that case, the court held that the owner's insurance company could not maintain an action against the tenant because "when fire insurance is provided for a dwelling it protects the insurable interests of all joint owners including the possessory interests of a tenant absent an express agreement by the latter to the contrary." ***Id.*** at 482.
>
> To the ***Sutton*** court, the special relationship between the landlord and tenant placed the tenant in a substantially different position than a fire-causing third party. While the court recognized that the carrier could have subrogated against a third party, it held that the carrier should not be able to shift the insurable risk to the negligent tenant. ***Id.*** … Also weighing in favor of adopting the implied coinsurance doctrine is that a portion of the landlord's

- 2 -

insurance premiums are necessarily paid by the tenant as part of the tenant's rent, thereby purchasing their status as a co-insured under the landlord's policy. Since **Sutton**, other state courts have adopted its strict rationale that unless the lease agreement expressly requires a tenant to procure fire insurance, the tenant is an implied co-insured of the landlord's policy.

The final approach is the case-by-case approach where courts determine the availability of subrogation based on the reasonable expectations of the parties as expressed in the lease under the facts of each case. Under this approach, the court will look to the lease agreement between the landlord and the tenant. The language of an insurance policy may also have an effect on whether a subrogation action may be maintained. If, for example, an insurer has waived its right to subrogation in an insurance policy, a court need look no further than the language of that policy to determine that the insurer cannot maintain a subrogation action against a negligent tenant. **See RAM Mut. Ins. Co. v. Rohde**, 820 N.W.2d 1, 15 (Minn. 2012).

In **RAM Mut. Ins. Co.**, the Minnesota Supreme Court rejected the Sutton Rule, stating that the case-by-case approach was the best approach because:

> The question presented by [this] subrogation action arises at the intersection of insurance law and landlord-tenant law governing the relationship of landlords and tenants. Both areas of law are grounded in contractual relationships, making a rule that reaches a result by examining the parameters of the relationship between an insurer and insured and a landlord and tenant, as defined in the parties' respective contracts, superior to one that makes legal assumptions that do not comport with the parties' reasonable expectations. By examining the reasonable expectations of the contracting parties to determine whether subrogation is appropriate in a particular case, the case-by-case approach avoids the legal assumptions of the other approaches, and thus best effectuates the intent of the parties by eliminating presumptions altogether. While the case-by-case approach does not provide the same kind of predictability that accompanies either the pro- or no-subrogation approaches, the case-by-case method provides more predictability to parties by simply enforcing the terms of their contracts.[4]

⁴ In footnotes 7, 8, and 9 of its opinion in **RAM**, the Minnesota Supreme Court stated that approximately 14 state courts have adopted the Sutton Rule no subrogation approach; 12 jurisdictions have adopted the pro-subrogation approach, either explicitly or implicitly; and "many" courts have adopted the case-by-case approach.

**Joella**, 221 A.3d at 677-78 (some internal citations omitted).

In **Joella**, this Court — after analyzing our prior decision in **Remy v. Michael D's Carpet Outlets**, 571 A.2d 446 (Pa. Super. 1990) — ascertained that Pennsylvania applies the case-by-case approach to determine if subrogation is permitted. Under this approach, to discern if subrogation is allowed, we consider the circumstances of the particular case and examine the terms of the landlord's insurance policy in conjunction with the provisions of the lease agreement. **Joella**, 221 A.3d at 679.

In my view, one of the problems with this approach is that, often, as in the case *sub judice*, the terms of the lease are ambiguous and/or silent as to who is responsible for obtaining fire insurance on the dwelling, leading to confusion.[1] For instance, it is not unusual for a lease to only state that the tenant must obtain renter's insurance, leading the tenant to believe that (1)

_____

[1] To illustrate this confusion, here, the Insurance Company seems to suggest that the Leases required the Landlord to insure the building, in contravention of the Majority's conclusion. **See** Insurance Company's Brief at 20 (stating that the Leases in this case required the Landlord to maintain fire insurance on the building); Insurance Company's Reply Brief at 2 ("It is true that the [L]eases required the [L]andlord to insure the building and that the [T]enants were not required to insure it."); **but see** Majority Op. at 2 (stating that the Leases' insurance provisions do not require the Landlord to obtain fire insurance on the Property).

he/she only has to obtain renter's insurance to protect himself/herself and his/her interests; (2) the landlord is insuring the structure; and that (3) the tenant is protected by the landlord's insurance on the structure because the lease did not require the tenant to obtain such insurance or advise otherwise. In such scenarios, when a tenant later accidentally causes a fire to start, burning down the building, the tenant understandably does not anticipate being sued by the landlord's insurer for the extensive damages to the structure. **Accord DiLullo v. Joseph**, 792 A.2d 819, 822 (Conn. 2002) ("The possibility that a lessor's insurer may proceed against a lessee almost certainly is not within the expectations of most landlords and tenants unless they have been forewarned by expert counseling.") (quoting R. Keeton & A. Widiss, Insurance Law (1988) § 4.4(b), pp. 340–41).[2]

_____

[2] The **DiLullo** Court also pointed out the economic waste involved where such subrogation is permitted:

> [I]t would be inappropriate to create a default rule that allocates to the tenant the responsibility of maintaining sufficient insurance to cover a claim for subrogation by his landlord's insurer. Such a rule would create a strong incentive for every tenant to carry liability insurance in an amount necessary to compensate for the value, or perhaps even the replacement cost, of the entire building, irrespective of the portion of the building occupied by the tenant. That is precisely the same value or replacement cost insured by the landlord under his fire insurance policy. Thus, although the two forms of insurance would be different, the economic interest insured would be the same. This duplication of insurance would, in our view, constitute economic waste and, in a multiunit building, the waste would be compounded by the number of tenants. **See Peterson v. Silva**, … 704 N.E.2d 1163[, 1166 (Mass. 1999)] ("[I]t surely is not in the public interest to

*(Footnote Continued Next Page)*

Nevertheless, as the Majority concludes, *Joella* and *Remy* support allowing subrogation in such instances, as both decisions placed emphasis on whether the lease required the landlord to purchase fire insurance. *See Joella*, 221 A.3d at 681 ("Under the circumstances of this particular case, where the lease provision requires [the l]andlord to maintain insurance on the building, we agree with the trial court that based on the reasonable expectations of the parties as expressed in the lease, [the t]enant is an implied co-insured under [the l]andlord's insurance policy."); *Remy*, 571 A.2d at 452 (noting, among other things, that the lease did not require the landlord to purchase fire insurance for the protection of the tenant, and determining that the tenant was not an implied co-insured).[3]

---

> require all the tenants to insure the building which they share, thus causing the building to be fully insured by each tenancy[.]").

*DiLullo*, 792 A.2d at 822-23.

[3] Another case from our Court, *Thomas v. Jones*, 2021 WL 462025 (Pa. Super. filed Feb. 9, 2021) (unpublished memorandum), likewise supports such a result. In *Thomas*, the appellant leased a third-floor apartment with a roommate. *Id.* at *1. The appellant and his roommate entered into a lease that set forth the following: "It is agreed that [the l]andlord is leasing said apartment to [the appellant] & [his roommate] and they are responsible for acquiring [r]enter's insurance and keeping said apartment damage free during the course of this leasing agreement." *Id.* Subsequently, a fire started in the roommate's bedroom, and burned down the property. *Id.* Although not captioned as a subrogation action, the landlord's insurer brought a subrogation action against the appellant, and a $100,000.00 judgment — representing the policy limits of the landlord's insurance on the property — was entered against the appellant. *Id.* The appellant appealed, arguing that the word 'damage' in the lease is overly broad and ambiguous. *Id.* The *Thomas* Court affirmed the trial court's judgment. In affirming the trial
*(Footnote Continued Next Page)*

- 6 -

Relatedly, another problem with the case-by-case approach is that it is not uncommon, as in *Joella*, for leases to state both that the landlord is responsible for maintaining insurance on the building *and* that the tenant shall not negligently damage the premises. Which contractual provision controls? The *Joella* Court indicated that the insurance provision carries more weight. *See Joella*, 221 A.3d at 680 (quoting favorably the proposition that "[i]f, under the lease or by some other commitment, the landlord has communicated to the tenant an express or implied agreement to maintain fire insurance on the leased premises, *absent some compelling provision to the contrary*, the court may properly conclude that, *notwithstanding a general 'surrender in good condition' or 'liability for negligence' clause in the lease*, their reasonable expectation was that the landlord would look only to the policy, and not to the tenant, for compensation for fire loss covered by the policy") (quoting the trial court's reference to *Rausch v. Allstate Insurance Co.*, 882 A.2d 801, 816 (Md. 2005); emphasis added). But, what if there is more than one clause in the lease holding the tenant liable for damages? Is the tenant then liable despite the insurance provision? And,

_____

court's judgment, the *Thomas* Court determined that the lease's language was plain and unambiguous. *Id.* It further observed that "[a] landlord's expectation interest in renting an apartment is that the tenants will surrender the premises in the same condition as when they took possession. Instead, [the appellant] returned a charred leasehold and building in need of extensive restorations. Having contractually assumed responsibility for all the damage to the apartment during his occupancy, [the appellant] is strictly liable for 'the actual loss' that [the landlord] suffered from the fire." *Id.* (citation omitted).

what would make a provision so compelling as to override a tenant's expectation that the landlord would look only to the policy for compensation?[4]

As such, in practice, I do not find the case-by-case approach to be very predictable or clear for landlords and tenants — most of whom are not legal or insurance experts — or for insurance companies.[5] I also think it is difficult for courts to apply. In the interests of avoiding financially devastating

---

[4] This issue very recently arose in *Mutual Benefit Insurance Co. v. Koser*, -- A.3d --, 2023 PA Super 252 (filed Dec. 4., 2023), a case in which I authored the majority opinion. There, our Court recognized that this scenario presented a close question, and ultimately determined that the tenants were implied co-insureds based on the proposition in *Joella* discussed *supra*. *See* page 7, *supra*. Notably, the appellant in that case — the insurance company — did not argue on appeal that Pennsylvania should apply an approach other than the case-by-case approach, and/or that our existing case law should be overruled. In addition, "[u]nder the doctrine of *stare decisis*, a three-judge panel of this Court cannot overrule another." *Commonwealth v. Burke*, 261 A.3d 548, 551 (Pa. Super. 2021) (internal quotation marks and citation omitted). Consequently, the Court did not assess the wisdom of the case-by-case approach and our current case law, and simply applied the law as it presently stands.

[5] *Accord* Insurance Company's Brief at 9 ("Some courts, including those in Pennsylvania, have taken a case-by-case approach to determine the availability of subrogation based on the reasonable expectations of the parties as expressed in the lease under the facts of each case. This approach has been criticized because it leads to unstable, unpredictable, and unacceptable results. Indeed, Pennsylvania cases are inconsistent in their outcomes."); *id.* at 15-16 ("It appears that Pennsylvania courts have taken the middle ground approach, deciding whether to allow subrogation on a case-by-case basis. However, two of the three Pennsylvania cases, *Thomas* and *Remy*[,] allow subrogation, whereas, *Joella* does not. As a result, Pennsylvania has fallen into the trap of having unstable and unpredictable results whenever a landlord's insurer brings a subrogation action. … [T]his is an unacceptable result.") (citation omitted); *see also id.* at 19-20 ("It is respectfully submitted that *Joella* should be overruled as being inconsistent with the other decisions….").

surprises and for judicial consistency, I think we should reconsider the approach we have taken, as the Insurance Company suggests. **See** footnote 5, **supra**. A reading of **Remy** reveals that the **Remy** Court gave little analysis as to what approach our Commonwealth should employ. **See Joella**, 221 A.3d at 679 (acknowledging that, "[a]s to what approach is used in Pennsylvania, the only case that addresses this issue is our decision in **Remy**, and then only indirectly"). Our Court, *en banc*, or our Supreme Court, should rectify that now by giving it more thorough and thoughtful consideration.[6]

_____

[6] The Tenants assert that the Insurance Company has waived the arguments that the case-by-case approach leads to inconsistent results, and that **Joella** should be overruled, because the Insurance Company did not raise these claims below. **See** Tenants' Brief at 35-36 ("[The Insurance Company] also argue[s] that … **Joella** … should be overruled since the case-by-[case ]approach leads to inconsistent results. [It relies] upon a student law review article … to support [its] argument that a pro-subrogation approach is preferred, but this argument was not raised before the trial court and has therefore[] been waived.") (citation and internal quotation marks omitted); **see also** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). In response, the Insurance Company explains that it did not argue below that **Joella** was wrongly decided and should be overruled because it would have been pointless to do so, as the trial court "could not overrule **Joella**, even if it had been asked to do so." Insurance Company's Reply Brief at 3 n.1.

I observe that the purpose of Rule 302(a) is to "to provide the trial court with the opportunity to consider the issue, rule upon it correctly, and obviate the need for appeal." **See Murray v. Lafrance, LLC**, 234 A.3d 782, 786 (Pa. Super. 2020) (cleaned up). Here, the trial court could not have overruled **Joella**, or considered an approach other than the case-by-case approach, as it is bound by our current case law. Thus, had the Insurance Company raised these arguments below, the purpose of Rule 302(a) could not have been fulfilled. In addition, the trial court's input on these issues is not necessary as "[t]he legal effect of a contract provision presents a question of law accorded full appellate review and is not limited to an abuse of discretion standard."
*(Footnote Continued Next Page)*

Judge Nichols joins this concurring opinion.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/26/2023

---

**See Joella**, 221 A.3d at 676 n.3 (citation omitted); **see also Clarke v. MMG Ins. Co.**, 100 A.3d 271, 275 (Pa. Super. 2014) ("The standard of review of questions of law is *de novo*, and the scope of review is plenary. Thus, in interpreting a contract, this Court need not defer to the trial court.") (citations omitted).

- 10 -