571 A.2d 446

Linda REMY and Michael Mentz, d/b/a Pharo's
Restaurant and Pizzeria

v.

MICHAEL D'S CARPET OUTLETS, Stan's Carpets, Inc.,
a/k/a Laramie Corporation and Panelrama, Inc., and
General Foam Corporation

Appeal of MICHAEL D'S CARPET OUTLETS, Laramie
Corporation, Stan's Carpet, Inc., and Panelrama, Inc.

KIMCO DEVELOPMENT CORPORATION, House of Bargains,
Inc., P.A.C. Meat Markets, Inc., d/b/a Boffa Brothers Fine
Meats, Fabric Center, Inc., Alfred Palmerio t/a Palmerio
Hairstyling, and Bagel Bin, Inc.

v.

MICHAEL D'S CARPET OUTLETS and Laramie Corporation
and Stan's Carpet, Inc. and Panelrama, Inc., and
General Foam Corporation

Appeal of GENERAL FOAM CORPORATION.

MICHAEL D'S CARPET OUTLETS

v.

GENERAL FOAM CORPORATION.

KIMCO DEVELOPMENT CORPORATION; House of Bargains,
Inc.; P.A.C. Meat Markets, Inc. d/b/a Boffa Brothers Fine
Meats; Fabric Center, Inc.; Alfred Palmerio, t/a Palmerio
Hairstyling; Bagel Bin, Inc., Appellants,

v.

MICHAEL D'S CARPET OUTLETS and Laramie Corporation
a/k/a Stan's Carpet, Inc. and Panelrama, Inc. and
General Foam Corporation, Appellees.

MICHAEL D'S CARPET OUTLETS, Appellant,

v.

GENERAL FOAM CORPORATION, Appellee.

Superior Court of Pennsylvania.

Argued Aug. 15, 1989.

Filed March 12, 1990.

438

Hugh M. Emory, Paoli, for Panelrama.

Peter J. Taylor, Pittsburgh, for Gen. Foam.

Elliott R. Feldman, Philadelphia for Kimco, House of Bargains, P.A.C. Meat Markets, Fabric Center, Alfred Palmerio and Bagel Bin.

Geoffrey Veith, Philadelphia, for Michael D's Carpet and Laramie Corp.

Before WIEAND, BECK and MONTGOMERY, JJ.

WIEAND, Judge:

During the early morning hours of May 10, 1983, a fire broke out in the basement of Michael D's Carpet Outlets (Michael D's) in the Springfield Shopping Center, Delaware County. It consumed the Michael D's store and severely damaged the shopping center, which was owned by Kimco Development Corporation (Kimco), as well as premises of several Kimco tenants. In an action against Michael D's and General Foam Corporation (General Foam), the manufacturer of polyurethane foam carpet padding stored in Michael D's basement, a jury found that the fire losses had been caused by the negligence of Michael D's in carelessly storing the foam padding (80%) and of General Foam in

failing to warn of the highly flammable nature of the foam padding (20%). In response to special interrogatories, the jury also found that Michael D's had not been negligent for failing to install a sprinkler system and that General Foam's product had not been defectively manufactured (there was no breach of warranty) or packaged but was defective because of a failure to warn of the product's highly inflammable nature. Pursuant thereto, verdicts were recorded in favor of Kimco in the amount of $694,-193.44; in favor of House of Bargains, Inc., a tenant, in the amount of $42,520.50; in favor of P.A.C. Meat Markets, Inc., another tenant, in the amount of $22,711.32; in favor of Fabric Center, Inc., a third tenant, in the amount of $38,967.49; in favor of Palmerio Hairstyling, a fourth tenant, in the amount of $20,566.82; in favor of Bagel Bin, Inc., a fifth tenant, in the amount of $14,155.00; and in favor of Pharo's Restaurant and Pizzeria, a final tenant, in the amount of $22,332.40. For purposes of our discussion, all claims will be included in the claim of Kimco. In a separate but consolidated action, a verdict was entered in favor of Michael D's and against General Foam in the amount of $597,934.43, representing the full amount of Michael D's fire loss. Post-trial motions filed by Michael D's and General Foam were denied, and judgments were entered on the verdicts. These judgments are the basis for appeals by Michael D's and General Foam. Petitions for delay damages by Kimco and Michael D's were denied, and these denials are the basis for separate appeals.

The evidence showed that a short time before the fire, Michael D's had received from General Foam a large shipment of polyurethane foam carpet padding. This foam padding had been stored from floor to ceiling in the basement of Michael D's store, taking up almost all available basement space. There was evidence from which a jury could find that Michael D's employees had general knowledge of the inflammatory quality of foam padding and that it was inadvisable to store the same in close proximity to open light bulbs. There was also evidence that the foam

padding had been stored too close to ceiling light bulbs and that this had caused the foam padding to ignite. This evidence was sufficient to sustain the finding that Michael D's had been negligent in causing the conflagration and resulting losses.

There was no evidence that the foam carpet padding had been defectively designed or manufactured. The jury also found that it had not been defectively packaged. There was evidence, however, that General Foam had failed to warn of the highly inflammatory nature of polyurethane foam padding. Thus, although Michael D's had a general knowledge that the foam padding was flammable, it was contended by Kimco—and also by Michael D's—that General Foam had failed to warn of the capacity of the foam padding for rapid and uncontrollable spread of fire after ignition. General Foam does not dispute that no such warning was given. The jury, in separate answers to special interrogatories, found that General Foam had been negligent in failing to give adequate warning and that the product was "defective" because of this failure to warn. Our review discloses no basis for disturbing these findings.

■ Even though a product is properly designed and manufactured, "it may be in an unreasonably dangerous defective condition if its manufacturer fails to warn the user or consumer of latent dangers in the use or operation of the product." *Conti v. Ford Motor Co.*, 743 F.2d 195, 197 (3rd Cir.1984) (applying Pennsylvania law), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1396, 84 L.Ed.2d 784 (1985). Inadequate warning of a dangerous propensity of the product may be a sufficient basis for imposing liability. *Ellis v. Chicago Bridge & Iron Co.*, 376 Pa.Super. 220, 226, 545 A.2d 906, 909 (1988).

A "defective condition" is not limited to defects in design or manufacture. The seller must provide with the product every element necessary to make it safe for use. One such element may be warnings and/or instructions concerning use of the product. A seller must give such warning and instructions as are required to inform the

user or consumer of the possible risks and inherent limitations of his product. Restatement (Second) of Torts § 402A, comment h. If the product is defective absent such warnings, and the defect is a proximate cause of the plaintiff's injury, the seller is strictly liable without proof of negligence.

"Comment h to the section [402–A] makes it clear that a product, as to which adequate warning of danger involved in its use is required, sold without such warning is in a 'defective condition.'" *Incollingo v. Ewing, et al.,* 444 Pa. 263, 287, 282 A.2d 206, 219 (1971).

*Berkebile v. Brantly Helicopter Corporation,* 462 Pa. 83, 100, 337 A.2d 893, 902 (1975).

■ "Where the theory of liability is failure to warn adequately, the evidence must be such as to support a reasonable inference, rather than a guess, that the existence of an adequate warning may have prevented the accident before the issue of causation may be submitted to the jury." *Conti v. Ford Motor Co., supra* at 198. See also: *Staymates v. ITT Holub Industries,* 364 Pa.Super. 37, 527 A.2d 140 (1987). Michael D's maintains that if it had been warned that proper storage methods would decrease the risk of fire, it would have taken necessary precautions to prevent the rapid spread of a fire. In reviewing the issue of causation, therefore, the proper focus of our inquiry is on additional precautions that might have been taken if there had been a warning. See: *Powell v. J.T. Posey Co.,* 766 F.2d 131 (3rd Cir.1985). The factfinder must "consider not only what *did* occur, but also what *might* have occurred.... Such a determination as to what *might* have happened necessarily requires a weighing of probabilities." *Hamil v. Bashline,* 481 Pa. 256, 269–270, 392 A.2d 1280, 1286–1287 (1978). Here, a jury could have found from the testimony that adequate warnings would have enabled Michael D's to install a sprinkler system or compartmentalize the storage of foam padding in order to minimize the risk of conflagration. See: *Petree v. Victor Fluid Power, Inc.,* 831 F.2d 1191 (3rd Cir.1987). Although Michael D's

conduct when warnings were given after the fire was a relevant consideration for the jury, the failure to install sprinkler systems in its replacement store did not determine as a matter of law that precautions would not have been taken if adequate warning had been received prior to the fire. A jury could find, therefore, that the failure to warn was a substantial factor in causing the conflagration.

 Both Michael D's and General Foam contend that they should have been granted a judgment n.o.v. because Kimco's evidence regarding the cause of the fire was contradictory. We disagree. There is no rule of law which prevents a plaintiff from advancing alternate theories of liability. In this case, there was testimony by the fire marshall, who was called as an expert by Kimco, that the fire had been caused by an electrical failure. A similar conclusion was reached by experts produced by Michael D's. However, other expert witnesses called by Kimco attributed the fire to a contact between stored foam carpet padding and an unshielded light bulb. This conflicting evidence was properly submitted to a jury. Whether the ignition was caused by electrical failure or by the overheating of foam padding, moreover, it is abundantly clear that the foam padding acted as an accelerant and caused the rapid spread of the fire into the all-consuming conflagration which destroyed the premises. The difference of opinion as to the cause of initial ignition between the fire marshall and Kimco's other experts was not fatal to its case.

Michael D's contends that the trial court erred when it permitted Dr. Kaczmarczik, Kimco's expert, to be recalled as a rebuttal witness. His testimony, it is argued, was repetitive, cumulative and a restatement of the testimony which he had given during Kimco's case in chief. Kimco argues, however, that Kaczmarczik's testimony was proper to rebut the testimony of Michael D's expert regarding electrical reactions.

 As a general rule, rebuttal testimony is proper where it is offered to discredit the testimony of an oppo-

nent's witnesses. *Schoen v. Elsasser,* 315 Pa. 65, 66–67, 172 A. 301, 302 (1934); *McNair v. Weikers,* 300 Pa.Super. 379, 386, 446 A.2d 905, 908 (1982). Whether to allow rebuttal evidence is within the discretion of the trial court. *Murphy v. Philadelphia,* 420 Pa. 490, 491, 218 A.2d 323, 324 (1966); *Neal by Neal v. Lu,* 365 Pa.Super. 464, 476, 530 A.2d 103, 110 (1987); *Mapp v. Dube,* 330 Pa.Super. 284, 294, 479 A.2d 553, 557 (1984). In this case, there was no abuse of discretion. The rebuttal testimony was offered to discredit Michael D's expert witness, and although it was at times repetitive of prior testimony given by the same witness, there is therein no basis for awarding a new trial.

█ Both General Foam and Michael D's cite as error the trial court's refusal to instruct the jury to apportion liability between General Foam and Michael D's. In *McMeekin v. Harry M. Stevens, Inc.,* 365 Pa.Super. 580, 530 A.2d 462 (1987), the Superior Court specifically held that it was permissible for a trial court to have the jury determine by means of special interrogatories "what percentage [of causal fault] was attributable to a defect in the product and what percentage [of causal fault] was attributable to the negligence of the joint tortfeasor." *Id.,* 365 Pa.Superior Ct. at 593, 530 A.2d at 468–469. This is necessary because "[i]t would ... be less than equitable to require a fifty-fifty apportionment when the facts, as determined by a jury, clearly established that one of the joint tort-feasors had greater responsibility for causing the harm than the other." *Id.,* 365 Pa.Superior Ct. at 588, 530 A.2d at 466. Cf. *Svetz for Svetz v. Land Tool Co.,* 355 Pa.Super. 230, 513 A.2d 403 (1986).

In the instant case, the trial court instructed the jury to apportion negligence, and the jury responded by finding that General Foam's causal negligence was twenty (20%) percent and Michael D's causal negligence was eighty (80%) percent. The trial court expressly refused, however, to instruct the jury to apportion causal fault or liability. This was error. After a careful examination of the record, however, we are persuaded that the error was harmless and does not require a new trial.

The evidence, as we have already observed, did not show that the foam padding had been defectively designed, manufactured, or packaged. The jury, in response to special interrogatories, specifically found that General Foam had not breached any warranty of fitness and had not packaged its product in a defective manner. The only basis on which the jury could have found that General Foam had been negligent or responsible for a defective product was its failure to warn of the highly flammable nature of its product. This the jury did. It determined that General Foam had acted unreasonably when it failed to give adequate warning. As such, the jury found that General Foam was both negligent and strictly liable for a defective product. Its verdict can only be interpreted as equating General Foam's failure to give adequate warning with negligence.

This is readily understandable. Although there is contrary language in some decisions, most authorities have been forced to concede that in practice a determination of the adequacy of warnings can be made only by borrowing from negligence concepts. Thus, Dean Keeton has written:

> [A] product may be defective as marketed because of a failure to adequately warn, or a failure to use proper means to warn about a risk or hazard related to the way the product was designed.... [L]iability is imposed on the ground that the seller or manufacturer failed adequately to warn about some risk or hazard, or failed adequately to instruct about how to avoid the risk or harm. Under this approach, the product is allegedly defective as marketed because of the failure to properly present it to purchasers and users.

> Notwithstanding what some courts have said, in establishing this ground of recovery, the plaintiff in most states must prove negligence in the failure to warn properly. There will be no liability in these cases without a showing that the defendant knew or should have known of the risk or hazard about which he failed to warn. Moreover, there will be no liability unless the seller or manufacturer failed to take the precautions that a reason-

able person would take in presenting the product to the public.

Although this ground of recovery is sometimes referred to as strict liability, it is really nothing more than a ground of negligence liability better described as the sale of a product in a defective condition.

W. Keeton, The Meaning of Defect in Products Liability Law—A Review of Basic Principles, 45 Mo.L.Rev. 579, 586–587 (1980).

■ Thus, when the jury found, in accordance with the trial court's instructions, that General Foam's causal negligence was twenty (20%) percent, its liability for a defective product was of necessity determined also to be twenty (20%) percent. We hold, therefore, that contribution between General Foam and Michael D's, joint tortfeasors, must be apportioned on the basis of the jury's findings that the ratio of negligence was 20%–80%.

■ Logic and simple fairness would seem to suggest that the same apportionment should be applied in determining General Foam's liability for Michael D's fire loss. The current state of the law in Pennsylvania, however, is to the contrary. In *McCown v. International Harvester Co.*, 463 Pa. 13, 342 A.2d 381 (1975), the Supreme Court specifically rejected contributory negligence as a defense in product liability actions based on Section 402A of the Restatement (Second) of Torts. This decision preceded the enactment of Pennsylvania's Comparative Negligence Law, 42 Pa.C.S. § 7102, which became effective June 27, 1978, and the Supreme Court has not subsequently considered the effect of the Comparative Negligence Law on its holding in *McCown*. Nevertheless, the Supreme Court has remained steadfast in its refusal to allow the concept of strict products liability to become contaminated by negligence principles. See: *Lewis v. Coffing Hoist Division, Duff–Norton Co., Inc.*, 515 Pa. 334, 528 A.2d 590 (1987); *Azzarello v. Black Brothers Co., Inc.*, 480 Pa. 547, 391 A.2d 1020 (1978); *Berkebile v. Brantly Helicopter Corp., supra*. Believing that the "Pennsylvania Supreme Court, perhaps more than

any other state appellate court in the nation, has been emphatic in divorcing negligence concepts from product liability doctrine," the Superior Court has declined to follow sister states in holding comparative negligence principles applicable to cases of strict products liability. *Staymates v. ITT Holub Industries,* 364 Pa.Super. 37, 45, 527 A.2d 140, 144 (1987), citing *Conti v. Ford Motor Co.,* 578 F.Supp. 1429, 1434 (E.D.Pa.1983). Thus, the law in this Commonwealth remains that the comparative fault of a plaintiff is irrelevant in products liability cases unless there has been an assumption of the risk, in which event there is a total defense.[1] It follows that the trial court did not err when it refused to mold the verdict on Michael D's claim in accordance with the provisions of the Pennsylvania Comparative Negligence Act.

Subrogation is an equitable doctrine; and, therefore, equitable principles apply in determining whether subrogation is available. By definition, subrogation can arise only with respect to the rights of an insured against third persons to whom the insurer owes no duty. *Keystone Paper Converters, Inc. v. Neemar, Inc.,* 562 F.Supp. 1046 (E.D.Pa.1983). It follows and, indeed, is now well established that an insurer cannot recover by means of subrogation against its own insured. *Keystone Paper Converters, Inc. v. Neemar, Inc., supra; Employers of Wausau v. Purex Corp.,* 476 F.Supp. 140 (E.D.Pa.1979); *Turner Const. Co. v. John B. Kelly Co.,* 442 F.Supp. 551 (E.D.Pa. 1976). Michael D's contends, therefore, that Kimco's action against it, which in reality is a claim by Kimco's insurer to enforce subrogation rights, cannot be maintained because Michael D's is an implied co-insured with Kimco under Kimco's policy of fire insurance.

1. A majority of the panel in this case is of the opinion that the better view would be to construe the comparative negligence statute as a comparative fault statute. This, we believe, is consistent with the intent of the legislature. See: *Dambacher by Dambacher v. Mallis,* 336 Pa.Super. 22, 87–89, 485 A.2d 408, 442–443 (1984) (Dissenting Opinion by Wieand, J.).

We reject this argument, as did the trial court. An argument that Michael D's is a co-insured is not supported by the terms of Kimco's fire insurance policy. The provisions of the lease, moreover, did not require Kimco, the landlord, to purchase fire insurance for the protection of Michael D's, the tenant. The lease provisions, however, did require specifically that Michael D's purchase and maintain its own liability insurance, including coverage for property damage. Under these circumstances, there is neither rule of law nor principle of equity which prevents the landlord or its fire insurance carrier from recovering against a tenant whose negligence has caused fire damage to the landlord's premises. See: *Turner Construction Co. v. John B. Kelly Co., supra*. Michael D's did not become a co-insured with its landlord merely because of lease provisions requiring the landlord to re-build in the event the demised premises were destroyed by fire. Neither were the subrogation rights of the landlord's fire insurance carrier impaired by the language of the lease which excused the tenant from liability for damage by *"unavoidable casualty ... to the extent that the same [was] covered by [Kimco's] fire insurance policy."* The casualty in this case, as the jury found, was not *unavoidable*. Thus, there is here no bar to a third party tort action by Kimco or its fire insurance carrier, which stands in the shoes of its insured, against Michael D's for fire damage caused by Michael D's negligence.

The trial court found that the delays in the case were not caused by any of the parties and, in reliance upon *Craig v. Magee Memorial Rehabilitation Center*, 512 Pa. 60, 515 A.2d 1350 (1986), denied requests for delay damages. Pa.R.C.P. 238 was thereafter amended by the Supreme Court and was made applicable to cases then pending. See: *Miller v. Wise Business Forms, Inc.*, 381 Pa.Super. 236, 553 A.2d 443 (1989); *Ceresini v. Valley View Trailer Park, Ephrata, Inc.*, 380 Pa.Super. 416, 552 A.2d 258 (1988), *overruled on other grounds* by *Snelsire v. Moxon*, 384 Pa.Super. 85, 557 A.2d 785 (1989) and *King v. SEPTA*, 383 Pa.Super. 420, 557 A.2d 11 (1989). Accord:

*Mathis v. United Engineers & Constructors, Inc.,* 381 Pa.Super. 466, 554 A.2d 96 (1989); *Staats v. Noll,* 381 Pa.Super. 162, 553 A.2d 85 (1989). Under amended rule 238, a plaintiff is entitled to damages for delay unless (1) a requisite offer, as therein defined, was made, or (2) the plaintiff was responsible for specified periods of time for which the trial was delayed.[2] See: *Schrock v. Albert Einstein Med. Center,* 386 Pa.Super. 215, 562 A.2d 875 (1989); *Modrick v. B.F. Goodrich Co.,* 383 Pa.Super. 498, 557 A.2d 363 (1989), *overruled on other grounds* by *King v. SEPTA, supra; Sherrill v. Port Authority of Allegheny County,* 383 Pa.Super. 104, 556 A.2d 450 (1989); *Miller v. Wise Business Forms, Inc., supra.* It is necessary, therefore, that we remand for a reconsideration of claims made by Kimco and Michael D's for delay damages. These claims must be determined in accordance with amended Pa.R.C.P. 238.

The judgments are affirmed. The cases are remanded, however, (1) for the entry of an order awarding contribution in accordance with the foregoing opinion, and (2) to permit the trial court to reconsider petitions for delay damages filed by the several claimants. Jurisdiction is relinquished.

---

**2.** The defendants argue that the amended Pa.R.C.P. 238 is grossly unfair. This is an argument which should more properly be made to the Supreme Court which adopted the rule.