J-A21017-23

2023 PA Super 272

| | | |
|---|---|---|
| WESTMINSTER AMERICAN INSURANCE COMPANY A/S/O ANDROULLA M. TOFALLI | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | |
| | : | No. 538 EDA 2023 |
| AMY S. BOND A/K/A AMY S. SAFIN AND AMY S. BOND A/K/A AMY S. SAFIN T/A BLONDIE'S SALON | : : : : | |

Appeal from the Order Entered February 3, 2023
In the Court of Common Pleas of Monroe County Civil Division at No(s):
161-CV-2021

BEFORE:  BENDER, P.J.E., DUBOW, J., and NICHOLS, J.

OPINION BY DUBOW, J.:                    **FILED DECEMBER 26, 2023**

Appellant, Westminster American Insurance Company ("Insurance Company"), appeals from the February 3, 2023 order entering summary judgment in favor of Amy S. Bond ("Bond") trading as Blondie's Salon[1] (collectively, "Tenants"), in this subrogation action.  After careful review, we reverse.[2]

The relevant facts and procedural history are as follows.  Androulla M. Tofalli ("Landlord") owns property located at 501 Sarah Street in Stroudsburg,

---

[1] The parties and the court also sometimes refer to "Blondie's Salon" as "Blondie Salon."

[2] On December 7, 2023, Insurance Company filed an Application for Post-Submission Communication.  We grant Insurance Company's Application and accept the post-submission communication as filed.

Monroe County (the "Property"). Insurance Company issued a fire insurance policy on the Property to Landlord, which was effective at all relevant times.

Bond operated Blondie's Salon on the ground floor of the building on the Property and, in her capacity as the operator of Blondie's Salon, rented the ground floor from Landlord pursuant to a written commercial lease ("Commercial Lease"). Bond also rented and resided in a second-floor apartment in the building pursuant to a residential lease ("Residential Lease") (collectively "the Leases").

The Leases contained provisions delineating Tenants' responsibility for obtaining insurance for personal items. We highlight, however, that these insurance provisions do not require the Landlord to obtain fire insurance on the Property.

The Residential Lease provides, in relevant part:

**21. Insurance and Release**

(A) Tenant understands that Landlord's insurance does not cover Tenant, Tenant's property, or Tenant's guests. Tenant is advised to obtain property and liability insurance to protect Tenant, Tenant's property, and Tenant's guests who may be injured while on the property.

X    If checked, Tenant must have insurance policies providing at least $10,000 property insurance and $100,000 liability insurance to protect Tenant, Tenant's property, and Tenant's guests who may be injured while on the Property. Tenant must maintain this insurance through the entire Term and any Renewable Term. Tenant will provide proof of insurance upon request. Tenant will notify Landlord within 10 days of changes to or cancellation of these policies.

(B) Landlord is not legally responsible for injury or damage to Tenant or Tenant's guests that occurs on the property.

(C) Tenant is responsible for any loss to Landlord caused by Tenant, Tenant's family or Tenant's guests, including attorney's fees associated with that loss.

Residential Lease, 3/31/18.

The Commercial Lease provides, in relevant part:

18. **INSURANCE AND RELEASE: TENANT MUST HAVE LIABILITY RENTAL INSURANCE**

A. Tenants understand that:

1. LANDLORD'S INSURANCE DOES NOT COVER TENANTS, TENANT'S PROPERTY, OR GUESTS.

2. TENANTS SHALL HAVE FIRE AND LIABILITY INSURANCE TO PROTECT TENANTS, TENANTS' PROPERTY, GUESTS, AND BUSINESS INVITEES WHO ARE INJURED ON THE PROPERTY AND PROVIDE PROOF OF SAME TO LANDLORD.

B. Landlord is not legally responsible for any injury or damage that occurs on the property and Tenants agree to pay any loss or claim, including attorney's fees that result from the damage or injury.

C. Tenants are responsible for any loss to Landlord that Tenants, Tenant[s'] family, guests, or invitees cause.

Commercial Lease, 12/1/09.

Sometime prior to May 10, 2020, Bond began using and remodeling the attic space of the building even though neither she nor her business had rented it. Bond removed the door between the attic space and her apartment, used various electrical power sources, burned candles and sage, and smoked in the attic.

On May 10, 2020, a fire broke out in the Property resulting in significant structural damage to the building. Landlord submitted a claim to Insurance

Company as the Property's insurer and Insurance Company paid Landlord approximately $375,872.

On April 11, 2022, Insurance Company filed a Complaint against Tenants, in the form of a subrogation claim, to recover from Tenants the amount that Insurance Company paid to Landlord.

On October 25, 2022, Tenants filed a Motion for Summary Judgment. Tenants argued in the motion that Insurance Company's claims failed as a matter of law because Tenants are "co-insureds" under the Leases and the law precludes an insurer from filing a subrogation action against a "co-insured." In particular, Tenants relied on *Joella v. Cole*, 221 A.3d 674 (Pa. Super. 2019), and argued that since the Leases did not require them to obtain fire insurance for the Premises, they possessed the reasonable expectation that they were implied "co-insureds" under Landlord's fire insurance policy.

On November 28, 2022, Insurance Company filed a response to Tenants' Motion for Summary Judgment. Insurance Company argued that Tenants were not "co-insureds" under the Landlord's fire insurance policy because the Leases contained no provision requiring the Landlord to obtain fire insurance.

Following consideration of briefs submitted by the parties, on February 2, 2023, the trial court granted Tenants' motion, entered summary judgment in their favor, and dismissed the Amended Complaint.

Insurance Company appealed. Both Insurance Company and the trial court complied with Pa.R.A.P. 1925.[3]

Insurance Company raises the following issue on appeal:

Whether a landlord's fire insurer can bring a subrogation action against the tenants whose alleged negligence and breaches of the lease destroyed the demised premises when the landlord's insurance policy was silent on the subject and when the leases stipulated that the landlord was not legally responsible for any damage to the landlord that the tenants may cause, and that the tenants were required to maintain fire and liability insurance?

Insurance Company's Brief at 3.

**A.**

Insurance Company challenges the entry of summary judgment in favor of Tenants. Our Supreme Court has clarified our role as the appellate court as follows:

On appellate review, []an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals. To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

***Summers v. Certainteed Corp.***, 997 A.2d 1152, 1159 (Pa. 2010) (citations and quotation marks omitted).

---

[3] In its Rule 1925(a) Opinion, the trial court directed us to its February 2, 2023 Order and Opinion for an explanation of its reasons for granting Tenants' Motion for Summary Judgment and dismissing the Complaint.

A trial court may grant summary judgment "only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." ***Id.*** (citation omitted); ***see also*** Pa.R.C.P. 1035.2(1). "When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party." ***Summers***, 997 A.2d at 1159. "In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt." ***Id.*** (citation and internal quotation marks omitted).

**B.**

We start our discussion with the basic principles supporting a right to subrogation. "Subrogation is an equitable doctrine intended to place the ultimate burden of a debt upon the party primarily responsible for the loss." ***Joella***, 221 A.3d at 677. An insurance company, however, may not file a subrogation action against a party to whom the insurance company owes a duty, such as the insurance company's own insured. ***Remy v. Michael D's Carpet Outlets***, 571 A.2d 446, 452 (Pa. Super. 1990), *aff'd sub nom.* ***Kimco Dev. Corp. v. Michael D's Carpet Outlets***, 637 A.2d 603 (Pa. 1993).

Since an insurer may not maintain a subrogation action against its own insured, we must determine whether Tenants are an insured under the Landlord's fire insurance policy. As an initial matter, it is undisputed that

Tenants are not a named or additional insured under the Landlord's fire insurance policy.

Our analysis, however, does not end there because the courts have created a legal fiction that permits a tenant, for purposes of a subrogation claim, to be considered a "co-insured" under a landlord's fire insurance policy for the property. Courts have considered tenants "co-insureds" under their landlord's fire insurance policy if it is reasonable to infer from the lease that the landlord has communicated to the tenant that the landlord will look to his fire insurer, and not the tenant, for losses to the property that arise from a fire. *Joella*, 221 A.3d at 679. Thus, the analysis of whether a tenant is a "co-insured" focuses on the terms of the lease. *Id*.

Under this approach, courts analyze the terms of the lease to determine "**the reasonable expectations of the parties as expressed in the lease under the facts of each case.**" *Id.* at 678 (emphasis added). In particular, courts focus on whether the explicit language of the lease is such that it is reasonable to infer that the landlord communicated to the tenant that the landlord will obtain fire insurance for the property and the landlord, and not the tenant, will be responsible for losses to the property as a result of a fire. *Id.* at 678. The Superior Court expanded on this concept as follows:

> If, under the lease or by some other commitment, **the landlord has communicated to the tenant an express or implied agreement to maintain fire insurance on the leased premises,** absent some compelling provision to the contrary, the court may properly conclude that notwithstanding a general "surrender in good condition" or "liability for negligence" clause in the lease, **their reasonable expectation was**

**that the landlord would look only to the policy, and not to the tenant, for compensation for fire loss covered by the policy. That expectation would constitute an implied commitment in the lease to relieve the tenant of liability to the extent of the policy coverage and it, too, would therefore preclude a subrogation claim.**

*Id.* at 680 (quoting *Rausch v. Allstate Ins. Co.,* 882 A.2d 801, 816 (Md. 2005)) (emphasis added).

The Superior Court first addressed the applicability of the fiction of a tenant being a "co-insured" under a landlord's fire insurance policy in *Remy*. In *Remy*, the Court concluded that the tenant was not a "co-insured" under the landlord's fire insurance policy because the lease was silent about imposing on the landlord the obligation to obtain fire insurance. *Remy*, 571 A.2d at 452.

In particular, the *Remy* Court relied upon the facts that (1) the provisions of the lease did not **require** the landlord to purchase fire insurance for the tenant's protection and (2) the lease specifically required the tenant to purchase and maintain its own liability insurance, including coverage for property damage. *Id.* Thus, to consider the tenant a "co-insured" under the policy, the court in *Remy* held that the lease must affirmatively require the landlord to obtain fire insurance, especially where the lease did require the tenant to "purchase and maintain its own liability insurance, including coverage for property damage." *Id.*

Applying the fiction of a "co-insured" to different terms in a lease, the Superior Court in *Joella*, found that the tenant was a "co-insured" under the landlord's fire insurance policy for the property. *Joella*, 221 A.3d at 680. In

- 8 -

*Joella*, the lease between the parties expressly provided that the landlord was responsible for obtaining and maintaining insurance on the building. *Id.* The lease further provided that the tenant "has the right to maintain fire and casualty insurance on the premises to cover their personal possessions, which are not covered by the [l]andlord's fire insurance." *Id.* (citation omitted). The Superior Court favorably quoted the trial court's conclusion that when both provisions are read together, "the lease creates the reasonable expectation that Landlord would look only to his insurance policy for compensation for fire loss [to the property] covered by his policy." *Id.* at 680-81. It further concluded that the tenant had a reasonable expectation that she would be a co-insured under the landlord's fire insurance policy for the property and, thus, the landlord's fire insurer could not file a subrogation claim against the tenant for losses to the property. *Id.* at 680.

**C.**

As noted above, the Leases in this case are silent about the Landlord's obligation to obtain fire insurance on the Property and only impose on the Tenants the obligation to obtain liability insurance and property insurance for their personal items. The trial court, however, interpreted this silence, and the obligation on the Tenants to obtain fire insurance for the Tenant's personal items, as making the Tenants "co-insureds" under the Landlord's fire insurance policy.

In particular, the trial court first acknowledged the absence of a provision in the Residential Lease and Commercial Lease as requiring the

Landlord to obtain and maintain fire insurance on the Premises. Trial Ct. Op., 2/2/23, at 6. The court also acknowledged that the Commercial Lease only required **Tenant** to purchase fire insurance "to protect [T]enant, [T]enant's property, guests, and business invitees." *Id.* Despite the absence of an obligation for the Landlord to obtain fire insurance on the Premises, the trial court read into the Leases this obligation on the grounds that the Landlord and Tenants would not enter into the Leases unless the Leases required the Landlord to obtain fire insurance on the Premises:

> [A] reasonable tenant would not expect that they would be required to insure the building itself from fire damage based upon the terms of these leases. It is natural, reading the leases as a whole, that "Landlord's insurance" would cover anything not specifically required of [Appellees]. Any other interpretation would be that Landlord and [Appellees] agreed to enter into leases with no fire insurance on the building itself. That is an untenable position.

*Id.*

We disagree with this analysis. The trial court has re-written the Lease by adding a provision that the Landlord is obligated to obtain fire insurance for the Property. A clear and unambiguous interpretation of the Leases is that the Leases did not require the Landlord to obtain fire insurance on the Property. Without a written obligation as a threshold matter, the trial court erred by concluding that the Lease reasonably communicated to the Tenant that the Landlord would obtain fire insurance for the Premises and thus, not look to the Tenants for losses to the Premises from a fire. In fact, a reasonable interpretation of the Leases is that the Landlord has no obligation to obtain

fire insurance for the Property and would, in fact, look to the Tenants for any losses from the fire.

The above-cited authority supports our analysis. The **Remy** court explicitly rejected the argument that a tenant can be a "co-insured" when a lease is silent about a Landlord's obligation to obtain fire insurance for the property. **Remy**, 571 A.2d at 452. Furthermore, the facts of the instant case are easily distinguishable from **Joella** where, based on an explicit term of the lease which imposed on the Landlord the obligation to obtain fire insurance on the property, it was reasonable for the trial court to conclude that the landlord had communicated to the tenant that the landlord would look only to his insurer, and not the tenant, for losses from a fire.

Thus, given the Leases' silence on Landlord's obligation to obtain and maintain fire insurance on the Premises, Tenants had no reasonable expectation that they were "co-insureds" on the fire insurance policy that the Insurance Company issued. Accordingly, the trial court erred in concluding that Insurance Company is precluded as a matter of law from pursuing a subrogation claim against Tenants and in granting summary judgment in Tenants' favor.

Order reversed.

Judge Nichols joins the opinion.

President Judge Emeritus Bender files a concurring opinion.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/26/2023