J-S01003-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| WEAVER WAREHOUSE, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEFF GOTTSCHALK AND DIETZ & | : | No. 847 MDA 2023 |
| BLUETT, LLC | : | |
| v. | : | |
| | : | |
| | : | |
| W.N. TUSCANO AGENCY, INC. | : | |

Appeal from the Order Entered May 30, 2023
In the Court of Common Pleas of York County
Civil Division at
No(s): 2019-SU-001727

BEFORE:   PANELLA, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.E.:                **FILED MARCH 28, 2024**

Weaver Warehouse, LLC appeals from the order entered May 30, 2023, granting summary judgment in favor of Jeff Gottschalk and Dietz and Bluett, LLC.[1] After careful review, we affirm.

At all times, Weaver Warehouse, LLC ("Weaver") had one shareholder and member, Matthew Steinkamp. On December 19, 2014, Weaver purchased

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1]Weaver Warehouse, LLC has only argued in its brief that the trial court erred in granting summary judgment as to Jeff Gottschalk and Dietz and Bluett, LLC. **See** Appellant's Brief, at 1, 2. Summary judgment was granted in favor of W.N. Tuscano Agency on May 30, 2023, but is not part of this appeal.

commercial property in York, Pennsylvania ("the Property"). The Property consisted of three buildings, located at 125 N. Broad Street, 127 N. Broad Street, and 410 Walnut Street.[2]

Weaver, through Steinkamp, initially sought insurance for the Property on July 15, 2015. Weaver enlisted Dietz and Bluett, LLC ("Dietz and Bluett") to assist in obtaining insurance. Dietz and Bluett is a licensed retail insurance agency that assists insurance applicants in obtaining insurance quotes either directly from an insurance carrier or through a wholesale insurance broker. Gottschalk was employed by Dietz and Bluett as a retail insurance agent. At all times relevant to this appeal, Weaver worked with Gottschalk as Dietz and Bluett's representative.

In 2015, Gottschalk was able to obtain a quote from Essex Insurance Company which included existing property coverage of over $1 million. Weaver conducted repair work on the Property, but ultimately stopped work and stopped paying the insurance premiums, allowing the policy to lapse in 2016. Weaver went without any insurance on the Property from that time until work began again in August of 2017.

Weaver decided in 2017 to renovate the Property. The renovations included demolishing 410 Walnut Street and converting 127 N. Broad Street

_____

[2] Weaver paid $135,680.51 for the property.

into an apartment complex.[3] Weaver obtained financing from Fulton Bank, however, Fulton Bank required builder's risk insurance. Weaver, through Steinkamp, met with Gottschalk to obtain the necessary coverage. Weaver informed Gottschalk it wanted $3 million in builder's risk insurance and $2.6 million in existing structure coverage, as per the renovations that Weaver had either completed or planned at that time.

On May 31, 2017, Gottschalk forwarded an application incorrectly stating that the Property had been purchased in June 2015 instead of December 19, 2014, and requested $3 million in builder's risk insurance and $2.6 million in existing structure coverage.

Gottschalk submitted the application to W.N. Tuscano ("Tuscano"), a licensed wholesale insurance broker who provided Dietz and Bluett access to insurance markets that they otherwise would not be able to access. Tuscano submitted the application to various insurance carriers. At least two carriers declined to offer any quote for coverage. Only one carrier, Great American Insurance Company of New York ("Great American"), offered a quote, but with far less existing structure coverage. Great American offered $3 million in

_____

[3] 127 N. Broad Street was an old piano factory building.

builder's risk insurance, but only $280,000.00 in existing structure coverage, divided between the three separate buildings.[4]

Gottschalk met with Steinkamp and informed him of the quote. Steinkamp questioned why the existing structure coverage was so low on 127 N. Broad Street and asked it to be increased to $480,000.00.[5] Gottschalk contacted Tuscano and requested the increase on 127 N. Broad Street to $480,000.00. Tuscano then requested Great American increase the existing structure coverage for 127 N. Broad Street to $480,000.00. Great American responded that it would not increase the coverage due to a concern of insurance fraud. Great American, based on the emails provided during the pendency of this case and the underwriter's deposition, seemed to believe, incorrectly, that the Property had been purchased in the preceding 12 months, and they had a standing policy that they did not offer existing structure coverage above the purchase price if the property were purchased within the past year. **See** Deposition of Walter Wilmshurst, 3/11/22, at 103-105. At no point was Gottschalk or Dietz and Bluett informed of Great American's confusion over the purchase date.

---

[4] The $280,000.00 was split up in the offer with 127 N. Broad Street having $130,000.00 in existing structure coverage and 125 N. Broad Street having $150,000.00 in existing structure coverage. 410 Walnut Street had $0 existing structure coverage because Weaver intended to demolish the building.

[5] This request was apparently based off an appraisal Steinkamp had of the Property.

Gottschalk informed Steinkamp that Great American declined to increase the existing structure coverage for 127 N. Broad Street. Steinkamp did not ask any further questions of Gottschalk, nor make any other requests. Weaver purchased the coverage, even though, on June 2, 2017, Steinkamp was also seeking insurance coverage for Weaver and the same project through Bubb Insurance, which provided a quote for $500,000.00 existing structure coverage and $3.5 million in builder's risk insurance. The Great American insurance coverage went into effect on August 18, 2017. While renovations were ongoing, the building at 127 N. Broad Street caught fire on March 21, 2018, causing significant damage to that building and additional damage to 125 N. Broad Street. Great American covered the losses and paid out over $2.5 million.

Weaver believes it was underinsured and not fully compensated by Great American; as such, it filed a complaint on June 5, 2019, against Gottschalk and Dietz and Bluett alleging negligence, negligent misrepresentation, breach of fiduciary duty, professional negligence, and *respondeat superior*. After preliminary objections were filed, negligent misrepresentation, breach of fiduciary duty, and professional negligence were either dismissed or withdrawn. On March 14, 2023, Gottschalk and Dietz and Bluett filed a motion for summary judgment. The trial court granted their

motion on March 30, 2023, after oral argument.[6] Weaver filed an appeal and a timely court-ordered Rule 1925(b) statement.

After receiving an extension to file the Rule 1925(b) statement, Weaver raises the following claims:

> Whether the trial court erred in granting summary judgment where the defendant failed to meet their burden to demonstrate there were no issues of material issues of fact?
>
> Whether the trial court erred in granting defendant's motion for summary judgment by failing to consider all facts of record and reasonable inferences, and to resolve any and all doubts in favor of plaintiff?
>
> Whether the trial court erred in granting defendant's motion for summary judgment where the court failed to give due deference to plaintiff's expert's opinion?
>
> Whether the trial court erred in granting summary judgment where the court's decision was based, in large part, on the plaintiff's rejection of an insurance quote by Bubb Insurance, which rejection was irrelevant to the determination of defendant's duties to plaintiff?
>
> Whether the trial court erred in granting defendant's motion for summary judgment on the basis defendant's had no duty to plaintiff?

Appellant's Brief, at 4 (extraneous capitalization omitted).

Our scope and standard of review are well-settled:

> On appellate review, an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This

---

[6] The transcript from the oral argument held on May 18, 2023,has not been provided to this Court.

means we need not defer to the determinations made by the lower tribunals. To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

***Westminster American v. Bond***, 307 A.3d 749, 752 (Pa. Super. 2023).

The trial court found the first three claims waived: "We believe Weaver has waived the first three issues it raises, as they are general allegations of error from which we cannot determine the precise error alleged." Trial Court Opinion, 8/14/23, at 8. Rule 1925(b) requires the statement to "concisely identify each error that the appellant intends to assert *with sufficient detail* to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii) (emphasis added). "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii). This Court has explained:

> When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues. In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all.

***Commonwealth v. Reeves***, 907 A.2d 1, 2 (Pa. Super. 2006) (quoting

***Lineberger v. Wyeth***, 894 A.2d 141, 148 (Pa. Super. 2006)).

In ***Lineberger***, this Court addressed a very similar claim as raised in Weaver's three issues. There, "[a]ppellant's Rule 1925(b) statement announced a very general proposition; namely, that the trial court erred when

it granted Wyeth's summary judgment motion." *Lineberger*, 894 A.2d at 148-149. The trial court found that the issue was too vague to preserve the issue for appeal and this Court agreed. *Id.* at 149. We find the same is required here. Weaver did not point to the specific issues that it intended to raise on appeal and therefore, the trial court did not address those claims in its Rule 1925(a) opinion. As Weaver has hampered our review, we find its first three claims waived. However, even if the claims were not waived, we would find Weaver is not entitled to relief, as discussed below.

Weaver argues in his fourth claim that the trial court placed undue emphasis on the fact that Weaver had another quote for insurance on the same project but chose not to purchase it. *See* Appellant's Brief, at 24. This, Weaver alleges, was an incorrect focus regarding the question of whether Gottschalk and Dietz and Bluett breached their duty to Weaver. *See id.* at 27.

Weaver alleged that Gottschalk was negligent in procuring adequate insurance coverage for the Property. Under Pennsylvania law, "[a] plaintiff acquires a cause of action against his broker or agent where the broker neglects to procure insurance, or does not follow instructions, or if the policy is void or materially defective through the agent's fault." *Laventhol & Horwath v. Dependable Ins. Assocs.*, 579 A.2d 388, 391 (Pa. Super. 1990) (quotation marks and citation omitted). Similar to a traditional negligence claim, insurance brokers face liability if "they fail to exercise the care that a reasonably prudent businessman in the brokerage field would exercise under

- 8 -

similar circumstances and if the broker fails to exercise such care and if such care is the direct cause of loss to his customer." ***Al's Café, Inc. v. Sanders Insurance Agency et al.***, 820 A.2d 745, 750 (Pa. Super. 2003) (citations and internal quotation marks omitted).

Summary judgment may properly be entered only "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." ***Williams v. Pilgrim Life Insurance Co.***, 452 A.2d 269, 270 (Pa. Super. 1982) (citation omitted). Moreover, a court must view the record in a light favorable to the non-moving party and any doubt must be resolved against the moving party. ***See Erie Insurance Exchange v. Eachus***, 306 A.3d 930, 932 (Pa. Super. 2023). The standards for summary judgment are also set forth in Pennsylvania Rule of Civil Procedure 1035.2, which states:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> > (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
> >
> > (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2.

Weaver claimed Gottschalk and Dietz and Bluett acted negligently in obtaining insurance for the project. There are four elements required to prove negligence:

> (1) the existence of a duty or obligation recognized by law, requiring the actor to conform to a certain standard of conduct; (2) a failure on the part of the defendant to conform to that duty, or a breach thereof; (3) a causal connection between the defendant's breach and the resulting injury; and (4) actual loss or damage suffered by the complainant.

*Atcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218, 1222 (Pa. 2002) (citation omitted). Our focus is on the second element, as the trial court found that Gottschalk and Dietz and Bluett did owe a duty to Weaver. The trial court found the duty required was "to take reasonable steps in obtaining the coverage his or her insured has specifically requested." Trial Court Opinion, 9/20/19, at 16. As stated above, our Court has held that a cause of action against a broker or agent may be maintained "where the broker neglects to procure insurance, or does not follow instructions, or if the policy is void or materially defective through the agent's fault." *Laventhol*, 579 A.2d at 391. We find that the trial court's decision regarding the existence of a duty is in line with our prior holdings. Now that we have determined that a duty was required by Gottschalk and Dietz and Bluett, we look to see whether the trial court focused on the wrong factors in determining if that duty was breached.

Weaver, around the same time Gottschalk and Dietz and Bluett were seeking insurance for the project, was also in communication with Bubb

Insurance.[7] Bubb Insurance provided a quote for the project with an existing structure coverage of $500,000.00. Weaver chose not to purchase that coverage. The trial court stated that Weaver did not purchase the coverage "for financial reasons and perhaps due to the need to produce Engineer approval." Trial Court Opinion, 5/30/23, at 2 n.2.

In its Rule 1925(a) opinion, the trial court explained that "[t]his observation has no relation to Defendants' duty to Weaver and we made no causal connection. As we made no connection between the Bubb Insurance quote and Defendants' duty to Weaver, we cannot further address a claim that making such a connection was error." Trial Court Opinion, 8/14/23, at 10.

Other than the footnote quoted above, the trial court made only one other reference to the Bubb Insurance quote in its opinion and order granting summary judgment: "Even as a fact intensive inquiry, we see no material dispute between the coverage sought and what was obtained which would preclude summary judgment now given Plaintiff's denial of the Bubb Insurance quote and their subsequent acceptance of the Great American quote as presented by Defendants." Trial Court Opinion, 5/30/23, at 3. While we agree that the trial court should not have placed any emphasis on Weaver obtaining

_____

[7] Weaver signed the Acord application with Dietz and Bluett for an insurance quote on the project on May 31, 2017, and received the initial quote from Great American on June 13, 2017. Weaver contacted Bubb Insurance in May 2017 and received their quote on June 2, 2017.

the Bubb Insurance quote as it does not affect the duty owed, we do not believe that the trial court placed undue emphasis on it.

The trial court clearly made its decision that Gottschalk and Dietz and Bluett did not breach their duty to Weaver, and that is why it granted summary judgment in their favor:

> As this [c]ourt previously held in ruling on Defendants' Preliminary Objections, specifically to the issue of duty, the relationship between Plaintiff and Gottschalk was nothing more than an "arm's length business transaction" and the [c]ourt gave slight weight to the overall public interest in requiring insurance agents to follow the requests of their insured. Defendants owed a duty to procure insurance as requested by Plaintiff, did so through its Agreement with wholesale broker Tuscano, and Plaintiff made the choice to purchase the coverage offered. Defendants' inability to obtain the higher amount requested is irrelevant to the question of duty. If their steps did not result in Plaintiffs desired coverage, such a result does not mean those steps were inadequate or insufficient with respect to the role of a retail insurance agency/agent. And here, viewing the evidence in light most favorable to Plaintiff, we find no breach of duty.

Trial Court Opinion, 5/30/23, at 3.

It is obvious from reading the trial court's entire opinion that it did not place undue emphasis on the Bubb Insurance quote. It found that Gottschalk and Dietz and Bluett had a duty to procure insurance as requested by Weaver, but when they tried to do so, they were unable to obtain the requested quote amount. Two insurance carriers refused to offer any quote at all. **See** Motion for Summary Judgment, 3/15/23, Exhibit L, at 1, 4; Deposition of Robert Tuscano, 8/4/21, at 72-73. Only Great American offered a quote, but with less existing structure coverage than Weaver wanted. **See** Complaint, 6/5/19, at

5; Answer, 10/10/19, Exhibit C, at 1. When Weaver requested a higher existing structure coverage on 127 N. Broad Street, Gottschalk reached out to its broker, Tuscano, who in turn reached out to Great American. *See* Deposition of Robert Tuscano, 8/4/21, at 113-16; Deposition of Jeff Gottschalk, 7/20/21, at 69-70, 74. Great American declined to increase the coverage. *See id.*; Deposition of Walter Wilmshurst, 3/11/22, at 100, 138. Gottschalk and Dietz and Bluett met their duty by requesting the insurance and the increase in existing structure coverage. While the coverage amount was not the exact amount Weaver requested, it was what could be obtained, and Weaver accepted it.[8] As the trial court aptly noted:

> Here, [Appellees] found only one company which would provide insurance to Weaver – Great American. Great American made a take it or leave it offer of insurance, which Weaver ultimately opted to take. Thus, we do not hold that [Appellees] had no duty to Weaver, but held that, under the circumstances, it was impossible for [Appellees] to procure insurance in the form Weaver requested. Further, we found no dispute of fact that Weaver accepted the insurance bid procured by [Appellees].

Trial Court Opinion, 8/14/2023, at 9.

_____

[8] While it is true that Great American's underwriter seemed confused over whether the Property was purchased in the preceding 12 months, that information (Great American's confusion) was never provided to Gottschalk or Dietz and Bluett. Gottschalk wrote on the application provided to Tuscano and Great American that the Property was purchased in June 2015, more than 12 months before the application, which was created on May 31, 2017.There is nothing in the record to this Court that shows Gottschalk or Dietz and Bluett were aware Great American believed the Property was purchased in the preceding 12 months.

As such, Gottschalk and Dietz and Bluett did not breach their duty to Weaver. They followed Weaver's instructions, procured insurance, and the policy was not void or materially defective. *See Laventhol*, 579 A.2d at 391. In fact, Weaver does not allege to the contrary; and only complains that the policy did not have the amount of existing structure coverage on 127 N. Broad Street that it wanted. Gottschalk and Dietz and Bluett took reasonable steps to try to obtain the insurance requested by Weaver. The trial court did not err in granting summary judgment as Gottschalk and Dietz and Bluett did not breach their duty to Weaver.

We note that Weaver argues that the "reasonable expectations" doctrine should apply. *See* Appellant's Brief, at 15, 16. We disagree. We have consistently held that:

> The standards to be applied in reviewing insurance contracts are well settled. The proper focus regarding *issues of coverage* under insurance contracts is the reasonable expectation of the insured. In determining the reasonable expectations of the insured, courts must examine the totality of the insurance transaction involved. However, while reasonable expectations of the insured are the focal points *interpreting the contract language* of insurance policies, an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous.

*Hertz Corp. v. Smith*, 657 A.2d 1316, 1317 (Pa. Super. 1995) (citations omitted; emphasis added); *see also Bishops, Inc. v. Penn National Ins.*, 984 A.2d 982, 990 (Pa. Super. 2009). Even if we were to apply this standard, Weaver "may not complain that [its] … reasonable expectations were frustrated by policy limitations which are clear and unambiguous." *Id.* Weaver

was explicitly informed that the existing structure coverage for 127 N. Broad Street was $130,000.00. It cannot now complain it was unaware, as the policy was clear and unambiguous.

In its final claim, Weaver alleges the trial court erred in holding that Gottschalk and Dietz and Bluett did not have a duty to Weaver. However, as thoroughly discussed above, the trial court did, in fact, find that Gottschalk and Dietz and Bluett owed a duty to Weaver. This issue lacks merit.

In sum, after careful review, we find that Weaver waived its first three issues, but even if not waived, they would not entitle it to relief. In Weaver's final two issues, the trial court correctly determined that summary judgment was appropriate. Therefore, we affirm the trial court's grant of summary judgment.

Order Affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/28/2024