J-A22037-19

2019 PA Super 313

| | | |
|---|---|---|
| RONALD T. JOELLA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ANNIE COLE | : | No. 396 EDA 2019 |

Appeal from the Order Entered January 10, 2019
In the Court of Common Pleas of Northampton County Civil Division at
No(s): C-48-CV-2018-02349

BEFORE: MURRAY, J., STRASSBURGER, J.[*], and PELLEGRINI, J.[*]

OPINION BY PELLEGRINI, J.: **FILED OCTOBER 18, 2019**

Ronald T. Joella (Landlord) appeals from the order entered in the Court of Common Pleas of Northampton County (trial court) denying his motion for partial judgment on the pleadings and granting the cross-motion for partial judgment on the pleadings filed by Annie Cole (Tenant). We affirm.

We derive the following facts and procedural history from our independent review of the record. On March 19, 2018, Landlord filed a complaint against Tenant, a former tenant in a residential apartment building.[1] The complaint included one count for negligence alleging that Tenant's negligent use of an extension cord caused a fire resulting in extensive damage

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] This is a subrogation action brought by Joella's insurance company, Erie Insurance Exchange.

to Landlord's property ($180,000.00). Specifically, Landlord averred that Tenant had run an extension cord across the hinges of a cabinet to a microwave, causing damage to the cord, which eventually ignited nearby combustibles. Tenant filed an answer with new matter raising affirmative defenses, including waiver and estoppel.

Landlord then filed a motion for partial judgment on the pleadings requesting the court to dismiss the waiver and estoppel defenses. Tenant answered that motion and in turn filed a cross-motion for partial judgment on the pleadings requesting the court to make a finding that Landlord and his insurer are barred from recovering against Tenant for the fire loss at the property. She argued that pursuant to the language of the lease, Landlord was required to maintain fire insurance for her protection and that she was, therefore, an implied co-insured under Landlord's insurance policy.[2]

The lease provides, in relevant part:

10. UTILITIES AND SERVICES.

\* \* \*

**Landlord shall be responsible for the following** utilities and services in connection with the above premises: . . . **Insurance on the building** only

11. **PROPERTY INSURANCE**. **Tenant has the right to maintain fire and casualty insurance** on the premises **to**

---

[2] Landlord maintains an insurance policy on the property through Erie Insurance Exchange. Tenant is not mentioned in the policy. (**See** N.T. Hearing, 11/06/18, at 5).

**cover their personal possessions**, which are not covered by the Landlord's fire insurance. They can talk to an insurance company concerning renters insurance to cover their interests.

(Real Estate Lease, at 1-2) (emphases added).

After hearing arguments, the trial court denied Landlord's motion but granted Tenant's cross-motion, finding that Landlord could not maintain an action against Tenant in subrogation for property damage because under the terms of the lease, the reasonable expectation of the parties is that she would be an implied co-insured under Landlord's policy. Landlord then timely filed this appeal.[3]

_____

[3] Our standard of review for the grant or denial of judgment on the pleadings is well-settled:

> The standard to be applied upon review of a motion for judgment on the pleadings accepts all well-pleaded allegations of the complaint as true. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

**Donaldson v. Davidson Bros.**, **Inc.**, 144 A.3d 93, 100 (Pa. Super. 2016), *appeal denied*, 169 A.3d 11 (Pa. 2017) (citation omitted).

Additionally, "contract construction and interpretation is generally a question of law for the court to decide." **Pops PCE TT, LP v. R & R Rest. Grp., LLC.,** 208 A.3d 79, 87 (Pa. Super. 2019) (citation omitted). The legal effect of a contract provision presents a question of law accorded full appellate review and is not limited to an abuse of discretion standard. **See id.**

**I.**

On appeal, Landlord contends that the trial court erred in finding that Tenant was an implied co-insured under Landlord's insurance policy. Before we address this issue, it is necessary to give some background of the various approaches of whether a landlord, through its insurance company, can maintain subrogation action against a negligent tenant.

**A.**

Subrogation is an equitable doctrine intended to place the ultimate burden of a debt upon the party primarily responsible for the loss. *See Prof'l Flooring Co., Inc. v. Bushar Corp.*, 152 A.3d 292, 301 (Pa. Super. 2016), *appeal denied*, 170 A.3d 1036 (Pa. 2017). "[S]ubrogation can arise only with respect to the rights of an insured against third persons to whom the insurer owes no duty." *Remy v. Michael D's Carpet Outlets*, 571 A.2d 446, 452 (Pa. Super. 1990), *aff'd sub nom. Kimco Dev. Corp. v. Michael D's Carpet Outlets*, 637 A.2d 603 (Pa. 1993) (citation omitted). An insurer, therefore, cannot recover by means of subrogation against its own insured. *See id.*

In a landlord-tenant relationship, absent a lease provision to the contrary, a tenant is generally liable in tort to its landlord for damages to the leased property caused by the tenant's negligence. *See* 1 Milton R. Friedman & Patrick A. Randolph, Jr., Friedman on Leases § 9:10 (5th ed.2004). However, when the landlord has procured insurance for its property, the issue then becomes whether the property insurer can file a subrogation claim

against the tenant when the tenant negligently caused damages. State courts have taken three different approaches to resolve this issue.

The first approach is the pro-subrogation approach in which a landlord's insurer can bring a subrogation claim against a negligent tenant absent an express provision in the lease to the contrary. Because the tenant is not an express or implied co-insured, the insurance company can maintain a suit against the tenant for property losses caused by the tenant's conduct. Courts that have adopted the pro-subrogation approach emphasize that a tenant has the responsibility to exercise ordinary care and should not be exculpated from the consequences of his own negligence unless the landlord and the tenant have expressly agreed that the tenant will not be held liable for loss resulting from the tenant's negligence:

> [I]t is the duty of the tenant to exercise ordinary care, in the use of the leased premises or property, not to cause any material and permanent injury thereto over and above the ordinary wear and tear, and ... he is liable to the landlord in damages for any such injury unnecessarily resulting from his wrongful acts or his failure to exercise such care.

Williams, Insurers' Rights of Subrogation, **supra** at 558 (quoting C.R. McCorkle, Annotation, Liability of Tenant for Damage to the Leased Property Due to His Acts or Neglect, 10 A.L.R.2d 1012, 1014 (1950)).

This is essentially the position that Landlord is advancing. Landlord argues that public policy considerations serve as a basis for not making a tenant an implied co-insured based on the lease agreement because it would exculpate Tenant of responsibility for her negligent conduct, burden insurance

- 5 -

carriers with exposure for tenant negligence — when such exposure purportedly is not bargained for between carrier and property owner.

The second approach is the anti-subrogation approach known as the "Sutton Rule." This approach is named after **Sutton v. Jondahl**, 532 P.2d 478 (Ok.Civ.App. 1975), a case where the ten-year-old son of a tenant took an electric popcorn popper to his bedroom to heat up some chemicals that caused the curtains to catch on fire, causing $2,382.57 in damages. In that case, the court held that the owner's insurance company could not maintain an action against the tenant because "when fire insurance is provided for a dwelling it protects the insurable interests of all joint owners including the possessory interests of a tenant absent an express agreement by the latter to the contrary." **Id.** at 482.

To the **Sutton** court, the special relationship between the landlord and tenant placed the tenant in a substantially different position than a fire-causing third party. While the court recognized that the carrier could have subrogated against a third party, it held that the carrier should not be able to shift the insurable risk to the negligent tenant. **Id.** at 482. Also weighing in favor of adopting the implied coinsurance doctrine is that a portion of the landlord's insurance premiums are necessarily paid by the tenant as part of the tenant's rent, thereby purchasing their status as a co-insured under the landlord's policy. Since **Sutton**, other state courts have adopted its strict rationale that unless the lease agreement expressly requires a tenant to

procure fire insurance, the tenant is an implied co-insured of the landlord's policy.

The final approach is the case-by-case approach where courts determine the availability of subrogation based on the reasonable expectations of the parties as expressed in the lease under the facts of each case. Under this approach, the court will look to the lease agreement between the landlord and the tenant. The language of an insurance policy may also have an effect on whether a subrogation action may be maintained. If, for example, an insurer has waived its right to subrogation in an insurance policy, a court need look no further than the language of that policy to determine that the insurer cannot maintain a subrogation action against a negligent tenant. **See RAM Mut. Ins. Co. v. Rohde**, 820 N.W.2d 1, 15 (Minn. 2012).

In **RAM Mut. Ins. Co**, the Minnesota Supreme Court rejected the **Sutton** Rule, stating that the case-by-case approach was the best approach because:

> The question presented by [this] subrogation action arises at the intersection of insurance law and landlord-tenant law governing the relationship of landlords and tenants. Both areas of law are grounded in contractual relationships, making a rule that reaches a result by examining the parameters of the relationship between an insurer and insured and a landlord and tenant, as defined in the parties' respective contracts, superior to one that makes legal assumptions that do not comport with the parties' reasonable expectations. **See Am. Family Mut. Ins. Co.**, 757 N.W.2d at 594 (concluding that the case-by-case approach "is the best approach to employ in the landlord-tenant context because it applies basic contract principles"). By examining the reasonable expectations of the contracting parties to determine whether subrogation is appropriate in a particular

case, the case-by-case approach avoids the legal assumptions of the other approaches, and thus best effectuates the intent of the parties by eliminating presumptions altogether. While the case-by-case approach does not provide the same kind of predictability that accompanies either the pro- or no-subrogation approaches, the case-by-case method provides more predictability to parties by simply enforcing the terms of their contracts.[4]

This is the approach that Tenant advanced and the trial court adopted in holding that under the terms of the lease, the reasonable expectation of the parties is that Tenant would be an implied co-insured.

**B.**

As to what approach is used in Pennsylvania, the only case that addresses this issue is our decision in **Remy**, and then only indirectly, but a case both Landlord and Tenant contend supports their position. In **Remy**, a fire broke out in the landlord's building and the landlord's insurer made payments to the landlord for the fire loss. The landlord's insurer, through its insured, brought a subrogation action against a tenant for the tenant's alleged negligence in causing the fire. On appeal, the tenant argued that the landlord's action, an action sounding in subrogation, could not be maintained because the tenant was an implied co-insured under the landlord's policy of fire insurance.

_____

[4] In footnotes 7, 8, and 9 of its opinion in **RAM**, the Minnesota Supreme Court stated that approximately 14 state courts have adopted the **Sutton** Rule no subrogation approach; 12 jurisdictions have adopted the pro-subrogation approach, either explicitly or implicitly; and "many" courts have adopted the case-by-case approach.

In finding that the landlord's insurer could subrogate against the tenant, we noted that the lease between the landlord and the tenant did not require the landlord to purchase fire insurance for the protection of the tenant, but required the tenant to purchase and maintain its own liability insurance, including coverage for property damage. *See id.* at 452. We also noted that the terms of the landlord's fire insurance policy did not name the tenant as a co-insured.

While we did not specifically state that we were applying the case-by-case approach to our analysis in *Remy*, it is obvious that that is exactly what we did because we did not apply the bright line pro or anti-subrogation approach.[5] Instead, we looked to the circumstances of the particular case and examined the terms of the landlord's insurance policy in conjunction with the provisions of the lease in finding that the landlord or its fire insurance carrier were not barred from recovering against the tenant whose negligence caused fire damage.

---

[5] Other courts have come to a similar conclusion. *See Greater N.Y. Mut. v. Caraballo*, 2013 Pa. Dist. & Cnty. Dec. LEXIS 919, at *1-2 (C.P. Lehigh Jan. 25, 2013) ("If Pennsylvania had adopted a *per se* rule protecting tenants from subrogation, a demurrer might be appropriate in this case. However, Pennsylvania does not adopt a *per se* rule on subrogation, but instead adopts a case by case analysis.") (citing *Remy*, 571 A.2d 446); *see also Dattel Family Ltd. P'ship*, 250 S.W.3d at 888 (noting that Pennsylvania follows the case-by-case approach); *State Farm Fla. Ins. Co. v. Loo*, 27 So. 3d 747, 750 n.5 (Dist. Ct. App. 2010) (same).

## C.

Even if Pennsylvania uses a case-by-case analysis, Landlord then contends that Tenant did not have reasonable expectation that her negligence would be covered because she should have reasonably expected to be held liable for fire damage caused by her negligent actions pursuant to the language of the lease itself. Landlord contends that the lease states that the "Landlord shall be responsible for . . . insurance on the building only." (**See** Record Previously Produced, R. 104a, Paragraph 10). He further states, "Tenant has the right to maintain fire and casualty insurance on the premises to cover their personal possessions, which are not covered by the Landlord's fire insurance. They can talk to an insurance company concerning renters insurance to cover their interests." (**See id.** Paragraph 11). Under those provisions, Landlord argues that pursuant to the lease, Tenant should have reasonably anticipated that she might be held liable for fire damage caused by her negligence.

In finding that it was the reasonable expectation of the parties that Tenant would be an implied co-insured on the policy, the trial court ably addressed that issue, holding:

> Here, [unlike in **Remy**] Paragraph 10 of the lease provides that Landlord shall be responsible for insurance on the building. Real Estate Lease ¶ 10. Meanwhile, Paragraph 11 states that "[t]enant has the right to maintain fire and casualty insurance on the premises *to cover their personal possessions, which are not covered by the Landlord's fire insurance.*" **Id.** ¶ 11 (emphasis added). Reading these two paragraphs together with all of the other lease provisions, and construing the terms of the lease

against Landlord, the drafter, in order to protect the reasonable expectations of Tenant, the adhering party, we conclude that it was reasonable for Tenant to expect that she would be a co-insured under the terms of the lease for any damage caused to the Property. *See Ross*, 333 A.2d at 754; *Bushar Corp.*, 152 A.3d at 300. We find this to be the most reasonable interpretation because a natural reading of the lease supports the position that everything, except for Tenant's personal possessions, is covered under Landlord's insurance policy. *See Gaffer Ins. Co. v. Discover Reinsurance Co.*, 936 A.2d 1109, 1113 (Pa. Super. 2007) ("[A] preferred contract interpretation ascribes under all circumstances *the most reasonable, probable, and natural conduct to the parties.*") (emphasis added) (internal quotations omitted).

We also believe this to be a proper conclusion when looking at other jurisdictions that employ the case-by-case approach. In *Rausch v. Allstate Insurance Co.*, 882 A.2d 801, 816 (Md. 2005), the Maryland Court of Appeals stated:

> If, under the lease or by some other commitment, the landlord has communicated to the tenant an express or implied agreement to maintain fire insurance on the leased premises, absent some compelling provision to the contrary, the court may properly conclude that, notwithstanding a general "surrender in good condition" or "liability for negligence" clause in the lease, their reasonable expectation was that the landlord would look only to the policy, and not to the tenant, for compensation for fire loss covered by the policy. That expectation would constitute an implied commitment in the lease to relieve the tenant of liability to the extent of the policy coverage and it, too, would therefore preclude a subrogation claim.

*Id.* Although Paragraph 8(f) of the lease states that the tenant shall not negligently damage the premises, that provision does not impart liability. *See* Real Estate Lease ¶ 8(f). Even if Paragraph 8(f) of the lease were construed as a general liability for negligence clause, the language of Paragraphs 10 and 11 of the lease creates the reasonable expectation that Landlord would look only to his insurance policy for compensation for fire loss covered by his policy. *See Rausch*, 882 A.2d at 816 (noting that absent some compelling provision to the contrary and notwithstanding any general provision imposing liability for negligence, the

- 11 -

reasonable expectation of the parties is that landlord would look only to the insurance policy for compensation for fire loss); **Union Mut. Fire Ins. Co. v. Joerg**, 824 A.2d 586, 591 (Vt. 2003) (holding that tenant is an implied co-insured where the lease requires landlord to carry fire insurance because it is reasonable to expect that landlord will look only to insurance for loss coverage.).

(Trial Court Opinion, at 7-9) (footnote omitted.)

As stated, while the terms of Landlord's insurance policy do not mention Tenant, the parties' lease specifically states that Landlord would obtain insurance for the building and that Tenant had the right to maintain her own insurance to cover her personal possessions. (**See** Real Estate Lease, at 2). Under the circumstances of this particular case, where the lease provision requires Landlord to maintain insurance on the building, we agree with the trial court that based on the reasonable expectations of the parties as expressed in the lease, Tenant is an implied co-insured under Landlord's insurance policy and that Erie Insurance Exchange cannot maintain a subrogation action against Tenant.

Order affirmed.

Judge Murray joins the opinion

Judge Strassburger concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/18/19</u>