J-A16024-23

2024 PA Super 137

| | | |
|---|---|---|
| MUTUAL BENEFIT INSURANCE COMPANY A/S/O MICHAEL SACKS | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | |
| | : | No. 1340 MDA 2022 |
| CORTNEY KOSER AND MICKAEL ABELS | : : | |

Appeal from the Order Entered August 26, 2022
In the Court of Common Pleas of Cumberland County Civil Division at
No(s):  2021-08502

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

OPINION BY BENDER, P.J.E.:                    **FILED JULY 03, 2024**

Appellant, Mutual Benefit Insurance Company a/s/o Michael Sacks ("Mutual Benefit"), appeals from the trial court's August 26, 2022 order granting Appellees', Cortney Koser and Mickael Abels (collectively "Tenants"), motion for judgment on the pleadings.[1]  After reviewing this admittedly close case, we affirm.

On October 22, 2021, Mutual Benefit filed a subrogation action against Tenants on behalf of its insured, Michael Sacks ("Landlord"), to recover

_____

[1] The record contains a stipulation to amend the caption and original complaint from "Michael Abels" to "Mickael Abels[,]" the correct spelling.  *See* Stipulation, 1/26/22.  Although the parties and trial court used "Mickael Abels" in the captions of subsequent filings, it does not appear that this amendment ever officially occurred.  We therefore amend the caption accordingly now.

amounts it paid to Landlord for a fire loss purportedly caused by the negligence of Tenants.[2]  In more detail, according to the facts alleged in Mutual Benefit's complaint, Landlord owned a rental property located at 256 North 21st Street, Camp Hill, Pennsylvania (the "Subject Property" or "Premises"), at all times relevant to this lawsuit.  Complaint, 10/22/21, at ¶¶ 3, 14.  Mutual Benefit averred that Landlord had a Mutual Benefit Homeowner's Insurance Policy ("Policy") for the Subject Property with a policy period from August 4, 2019 to August 4, 2020, and coverage limits of $200,000.00 for the dwelling and $140,000.00 for personal property.  *Id.* at ¶ 7.  Mutual Benefit relayed that Landlord leased the Subject Property to Tenants.  *See id.* at ¶ 6.[3]  Mutual Benefit stated that, on or about August 3, 2020, while the Subject Property was under the possession and control of Tenants, a fire erupted in the back bedroom of the Subject Property and spread throughout the dwelling, causing significant smoke and fire damage to the dwelling and Landlord's personal

---

[2] As will be discussed further *infra*, subrogation

> is an equitable doctrine intended to place the ultimate burden of a debt upon the party primarily responsible for the loss. Subrogation allows the subrogee (in this case the insurer) to step into the shoes of the subrogor (the insured) to recover from the party that is primarily liable (the third party tortfeasor) any amounts previously paid by the subrogee to the subrogor.

*Professional Flooring Company, Inc. v. Bushar Corporation*, 152 A.3d 292, 301 (Pa. Super. 2016) (citations omitted).

[3] Mutual Benefit purported to have attached a copy of the lease agreement to its complaint as an exhibit; however, such an exhibit to the complaint is not included in the certified record.

property located on the Subject Property. *See id.* at ¶¶ 8, 15. According to Mutual Benefit, a subsequent investigation revealed that Tenants had left a candle burning in the back bedroom area of the Subject Property and caused the fire. *Id.* at ¶ 16. It claimed that, as a direct and proximate result of Tenants' failure to extinguish the burning candle and/or monitor it, Landlord sustained the damages described above. *Id.* at ¶ 17. Mutual Benefit conveyed that it later made payments to Landlord pursuant to the Policy, which was in full force and effect at the time of the fire, in the amount of $187,477.92 for the damage to the dwelling, and in the amount of $4,144.00 for the damage to Landlord's personal property. *Id.* at ¶¶ 9, 19. As a result of these payments, Mutual Benefit sought subrogation from Tenants. *Id.* at ¶ 21.

On January 5, 2022, Tenants filed an answer with new matter and a counterclaim for declaratory judgment. In their answer, *inter alia*, Tenants denied that Landlord's damages were caused as a direct and proximate result of their failure to extinguish and/or monitor a candle burning in the back bedroom of the Subject Property. *See* Tenants' Answer with New Matter and Counterclaim, 1/5/22, at ¶¶ 16, 17. Tenants also denied that Mutual Benefit has a right to bring a cause of action against them, claiming that they are implied co-insureds on the Landlord's Policy, and that therefore Mutual Benefit is unable to pursue subrogation against them. *Id.* at ¶ 21. Tenants similarly raised this theory, among other things, in their new matter. *Id.* at ¶ 35 ("[Mutual Benefit's] claims are barred to the extent [Tenants] are implied co-

insureds under the … Policy issued to [Landlord].").  In their counterclaim for declaratory judgment, Tenants explained that an insurer is unable to recover against its own insured by means of subrogation, and that — pursuant to the lease — Tenants reasonably expected to be implied co-insureds under the Policy for damage to property owned by Landlord.  *Id.* at ¶¶ 49, 55.  They therefore sought a declaration that "(1) [Tenants] are implied co-insureds under the … Policy purchased and retained by [Landlord]; and (2) [Mutual Benefit] is preclud[ed] from presenting a subrogation claim against [Tenants] for the losses allegedly incurred in the fire of August 3, 2020."  *See id.* at 9-10.  To support their claim, they attached as an exhibit a copy of the lease agreement.  *See id.* at Exhibit A ("Lease").

Thereafter, Mutual Benefit filed a reply to Tenants' new matter and counterclaim.  Among other things, it admitted that the copy of the lease attached to Tenants' pleading was a true and accurate copy, but denied that Tenants are entitled to any relief on their declaratory judgment claim.  *See* Mutual Benefit's Reply to Tenants' New Matter and Counterclaim, 1/25/23, at ¶¶ 40, 53.

Subsequently, on March 16, 2022, Tenants filed a motion for judgment on the pleadings.  There, they again advanced that they were implied co-insureds on the Landlord's Policy for damage to any property owned by Landlord and that, since they were co-insureds, Mutual Benefit is not permitted to subrogate against them.  Tenants' Motion for Judgment on the Pleadings, 3/16/22, at ¶ 1.  Mutual Benefit then filed a response in opposition,

and Tenants filed a reply. *See* Mutual Benefit's Reply to Tenants' Motion for Judgment on the Pleadings, 4/28/22; Tenants' Reply Brief in Support of Motion for Judgment on the Pleadings, 5/5/22.

On August 26, 2022, the trial court entered an order and accompanying opinion, in which it granted Tenants' motion for judgment on the pleadings. Based on the lease between Landlord and Tenants, the trial court concluded that Tenants had a reasonable expectation of being co-insureds on Landlord's insurance policy, therefore precluding Mutual Benefit's subrogation claim. Specifically, the trial court determined that the lease "effectively provided that [L]andlord was to be responsible for insurance on the building, and [T]enants were encouraged to procure separate insurance coverage for property they owned[,]" and that "[o]ther provisions in the lease merely verbalized the general rule that[,] as between the parties[,] liability for damage to [the] leased premises caused by a tenant's negligence falls upon the tenant[.]" Trial Court Opinion ("TCO"), 8/26/22, at 7. Mutual Benefit thereafter filed a timely notice of appeal and complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court indicated in its Rule 1925(a) opinion that it was relying on the rationale set forth in its earlier opinion accompanying the August 26, 2022 order.

On appeal, Mutual Benefit raises one issue for our review:

Did the trial court err as a matter of law when it granted [Tenants'] motion for judgment on the pleadings and found that [Tenants] were implied co-insureds on [L]andlord's insurance policy, and

- 5 -

therefore were immune to [Mutual Benefit's] subrogation suit as [L]andlord's insurer, where the lease did not contain language creating a reasonable expectation that [Tenants] would be implied co-insureds, and instead contained multiple provisions imposing liability for any damage to the leased property upon [Tenants]?

Mutual Benefit's Brief at 4.

In addressing Mutual Benefit's issue, we remain cognizant of the following:

> Our standard of review of the trial court's grant of judgment on the pleadings is *de novo* and our scope of review is plenary. Judgment on the pleadings is properly entered where the pleadings and documents admitted in the pleadings establish that there are no disputed issues of fact and that the defendant is entitled to judgment as a matter of law[,] or where accepting the well-pleaded factual averments of the plaintiff's complaint as true, the defendant is entitled to judgment as a matter of law.

***Grabowski v. Carelink Community Support Services, Inc.***, 230 A.3d 465, 470 (Pa. Super. 2020) (internal citations omitted). Further, we acknowledge that "contract construction and interpretation is generally a question of law for the court to decide. The legal effect of a contract provision presents a question of law accorded full appellate review and is not limited to an abuse of discretion standard." ***Joella v. Cole***, 221 A.3d 674, 676 n.3 (Pa. Super. 2019) (cleaned up).

This Court has previously confronted the issue of whether a landlord's property insurer can file a subrogation action against a tenant that has negligently damaged the landlord's property in ***Remy v. Michael D's Carpet Outlets***, 571 A.2d 446 (Pa. Super. 1990), and ***Joella***, ***supra***. Because the parties heavily rely on these cases to support their respective positions, we examine each of them closely.

We turn first to **Remy**. In that case, a tenant's negligence contributed to causing a fire to break out in the basement of the tenant's store, leading to severe property damage to the landlord's shopping center. **Remy**, 571 A.2d at 448. The landlord's insurer tried to enforce its subrogation rights against the tenant, and the tenant argued that the insurer could not do so because the tenant was an implied co-insured under the landlord's fire insurance policy. **Id.** at 452.

On appeal, in considering whether the tenant was an implied co-insured, the **Remy** Court explained that "[s]ubrogation is an equitable doctrine; and, therefore, equitable principles apply in determining whether subrogation is available." **Id.** (citation omitted). It observed that, "[b]y definition, subrogation can arise only with respect to the rights of an insured against third persons to whom the insurer owes no duty. It follows and, indeed, is now well established that an insurer cannot recover by means of subrogation against its own insured." **Id.** (citations omitted). In assessing whether the insurer owed a duty to the tenant, the **Remy** Court opined that the landlord's fire insurance policy, as well as the lease agreement between the landlord and tenant, did not support the conclusion that the tenant was an implied co-insured under the landlord's fire insurance policy, stating:

> An argument that [the tenant] is a co-insured is not supported by the terms of [the landlord's] fire insurance policy. The provisions of the lease, moreover, did not require … the landlord[] to purchase fire insurance for the protection of … the tenant. The lease provisions, however, did require specifically that [the tenant] purchase and maintain its own liability insurance, including coverage for property damage. Under these

circumstances, there is neither rule of law nor principle of equity which prevents the landlord or its fire insurance carrier from recovering against a tenant whose negligence has caused fire damage to the landlord's premises. [The tenant] did not become a co-insured with its landlord merely because of lease provisions requiring the landlord to re-build in the event the demised premises were destroyed by fire. Neither were the subrogation rights of the landlord's fire insurance carrier impaired by the language of the lease which excused the tenant from liability for damage by "*unavoidable casualty* … to the extent that the same [was] covered by [the landlord's] fire insurance policy." The casualty in this case, as the jury found, was not *unavoidable*. Thus, there is here no bar to a third party tort action by [the landlord] or its fire insurance carrier, which stands in the shoes of its insured, against [the tenant] for fire damage caused by [the tenant's] negligence.

*Id.* (citation omitted; emphasis and some brackets in original).

Nearly thirty years after **Remy** was decided, this Court again encountered the issue of whether a landlord's insurer could bring a subrogation action against a negligent tenant in **Joella**. In **Joella**, the tenant of a residential apartment building allegedly caused a fire by negligently using an extension cord, which resulted in extensive damage to the landlord's property in the amount of $180,000.00. **Joella**, 221 A.3d at 676. The landlord's insurance company subsequently brought a subrogation action against the tenant. *Id.* at 676 n.1. The tenant was not mentioned in the landlord's insurance policy. *Id.* at 676 n.2. Nevertheless, the tenant filed a motion for judgment on the pleadings, arguing that — pursuant to the language in the relevant lease agreement between her and the landlord — the landlord was required to maintain fire insurance for the tenant's protection and that she was, therefore, an implied co-insured under the landlord's

insurance policy. *Id.* at 676. The lease in *Joella* set forth that the landlord "shall be responsible for … [i]nsurance on the building only[,]" and provided that the tenant "has the right to maintain fire and casualty insurance on the premises to cover their personal possessions, which are not covered by the [l]andlord's fire insurance. They can talk to an insurance company concerning renters [*sic*] insurance to cover their interests." *Id.* (citing paragraphs 10 and 11 of the relevant lease agreement; emphasis omitted). The trial court agreed with the tenant and granted her motion for judgment on the pleadings, and the landlord appealed. *Id.*

On appeal, the *Joella* Court recognized that, "[i]n a landlord-tenant relationship, absent a lease provision to the contrary, a tenant is generally liable in tort to its landlord for damages to the leased property caused by the tenant's negligence." *Id.* at 677 (citation omitted). Notwithstanding, where the landlord has procured insurance for its property, the *Joella* Court acknowledged that a question arises about whether the property insurer can file a subrogation claim against a tenant when the tenant negligently caused damages. *Id.* To answer this question, the *Joella* Court referenced *Remy*, *supra*, and ascertained that Pennsylvania applies a case-by-case approach to determine the availability of subrogation by looking at the circumstances of the particular case and examining the terms of the landlord's insurance policy

in conjunction with the provisions of the lease agreement. *Id.* at 679.[4]  It

cited a Minnesota Supreme Court case, which described the benefits of the

case-by-case approach as follows:

> Both [insurance law and landlord-tenant] law are grounded in contractual relationships, making a rule that reaches a result by examining the parameters of the relationship between an insurer and insured and a landlord and tenant, as defined in the parties' respective contracts, superior to one that makes legal assumptions that do not comport with the parties' reasonable expectations.  By examining the reasonable expectations of the contracting parties to determine whether subrogation is appropriate in a particular case, the case-by-case approach avoids the legal assumptions of the other approaches, and thus best effectuates the intent of the parties by eliminating presumptions altogether.  While the case-by-case approach does not provide the same kind of predictability that accompanies either the pro- or no-subrogation approaches, the case-by-case method provides more predictability to parties by simply enforcing the terms of their contracts.

---

[4] In comparison to the case-by-case approach, some states employ a pro-subrogation approach, which allows a landlord's insurer to bring "a subrogation claim against a negligent tenant absent an express provision in the lease to the contrary." *Joella*, 221 A.3d at 677.  "Courts that have adopted the pro-subrogation approach emphasize that a tenant has the responsibility to exercise ordinary care and should not be exculpated from the consequences of his own negligence unless the landlord and the tenant have expressly agreed that the tenant will not be held liable for loss resulting from the tenant's negligence…." *Id.* (citations omitted).  In contrast, the anti-subrogation approach applied by some states upholds that, "unless the lease agreement expressly requires a tenant to procure fire insurance, the tenant is an implied co-insured of the landlord's policy." *Id.* at 678.  The anti-subrogation approach weighs that "the special relationship between the landlord and tenant place[s] the tenant in a substantially different position than a fire-causing third party." *Id.*  In addition, the anti-subrogation approach considers that "a portion of the landlord's insurance premiums are necessarily paid by the tenant as part of the tenant's rent, thereby purchasing their status as a co-insured under the landlord's policy." *Id.*

*Id.* at 678-79 (quoting ***RAM Mut. Ins. Co. v. Rohde***, 820 N.W.2d 1, 15 (Minn. 2012)) (footnote and internal citation omitted).

In applying the case-by-case approach to the facts before it, the ***Joella*** Court agreed with the trial court's analysis that,

> [r]eading … paragraphs [10 and 11 of the lease[5]] together with all of the other lease provisions, and construing the terms of the lease against [the l]andlord, the drafter, in order to protect the reasonable expectations of [the t]enant, the adhering party, we conclude that it was reasonable for [the t]enant to expect that she would be a co-insured under the terms of the lease for any damage caused to the [p]roperty.

*Id.* at 680 (quoting, with approval, the trial court's analysis; citation omitted).

The ***Joella*** Court approved the trial court's conclusion that "this [is] the most reasonable interpretation because a natural reading of the lease supports the position that everything, except for [the t]enant's personal possessions, is covered under [the l]andlord's insurance policy." *Id.* (quoting the trial court's opinion; citation omitted).

Moreover, the ***Joella*** Court also quoted favorably the following from the trial court's opinion:

> In ***Rausch v. Allstate Insurance Co.***, … 882 A.2d 801, 816 (Md. 2005), the Maryland Court of Appeals stated:
>
> > If, under the lease or by some other commitment, the landlord has communicated to the tenant an express or

---

[5] These were the paragraphs stating that the landlord "shall be responsible for … [i]nsurance on the building only[,]" and that the tenant "has the right to maintain fire and casualty insurance on the premises to cover their personal possessions, which are not covered by the [l]andlord's fire insurance.  They can talk to an insurance company concerning renters [*sic*] insurance to cover their interests." ***Joella***, 221 A.3d at 676 (citing the at-issue lease; emphasis omitted).

- 11 -

> implied agreement to maintain fire insurance on the leased premises, absent some compelling provision to the contrary, the court may properly conclude that, notwithstanding a general "surrender in good condition" or "liability for negligence" clause in the lease, their reasonable expectation was that the landlord would look only to the policy, and not to the tenant, for compensation for fire loss covered by the policy. That expectation would constitute an implied commitment in the lease to relieve the tenant of liability to the extent of the policy coverage and it, too, would therefore preclude a subrogation claim.

> ***Id.*** Although Paragraph 8(f) of the lease states that the tenant shall not negligently damage the premises, that provision does not impart liability. Even if Paragraph 8(f) of the lease were construed as a general liability for negligence clause, the language of Paragraphs 10 and 11 of the lease creates the reasonable expectation that [the l]andlord would look only to his insurance policy for compensation for fire loss covered by his policy. ***See Rausch***, 882 A.2d at 816 (noting that absent some compelling provision to the contrary and notwithstanding any general provision imposing liability for negligence, the reasonable expectation of the parties is that landlord would look only to the insurance policy for compensation for fire loss); ***Union Mut. Fire Ins. Co. v. Joerg***, … 824 A.2d 586, 591 (Vt. 2003) (holding that [the] tenant is an implied co-insured where the lease requires [the] landlord to carry fire insurance because it is reasonable to expect that [the] landlord will look only to insurance for loss coverage[]).

***Joella***, 221 A.3d at 680-81 (internal citation omitted; quoting the trial court's opinion). Thus, even though the terms of the landlord's insurance policy did not mention the tenant, the ***Joella*** Court concluded that,

> where the lease provision requires [the] landlord to maintain insurance on the building, we agree with the trial court that based on the reasonable expectations of the parties as expressed in the lease, [the t]enant is an implied co-insured under [the l]andlord's insurance policy and that [the landlord's insurer] cannot maintain a subrogation action against [the t]enant.

*Id.* at 681.[6]

      With the foregoing case law in mind, we examine the lease between Landlord and Tenants.[7]  In doing so, we note that:

_____

[6] Though not cited by the parties, our research uncovered another case from our Court — *Thomas v. Jones*, 2021 WL 462025 (Pa. Super. filed Feb. 9, 2021) — where a landlord's insurer pursued subrogation against a landlord's tenant for damage caused to a landlord's property from a fire.  In *Thomas*, the appellant rented a third-floor apartment with a roommate.  *Id.* at *1.  The appellant and his roommate signed a lease that stated the following: "It is agreed that [the l]andlord is leasing said apartment to [the appellant] & [his roommate] and they are responsible for acquiring [r]enter's insurance and keeping said apartment damage free during the course of this leasing agreement."  *Id.*  Subsequently, a fire started in the roommate's bedroom, causing the property to burn down.  *Id.*  While not captioned as a subrogation action, the landlord's insurer brought a subrogation action against the appellant, and a $100,000.00 judgment — representing the policy limits of the landlord's insurance on the property — was entered against him.  *Id.*  The appellant appealed, arguing that the word 'damage' in the lease is overly broad and ambiguous.  *Id.*  The *Thomas* Court affirmed the trial court's judgment.  In doing so, the *Thomas* Court concluded that the lease's language was plain and unambiguous.  *Id.*  It also opined that "[a] landlord's expectation interest in renting an apartment is that the tenants will surrender the premises in the same condition as when they took possession.  Instead, [the appellant] returned a charred leasehold and building in need of extensive restorations.  Having contractually assumed responsibility for all the damage to the apartment during his occupancy, [the appellant] is strictly liable for 'the actual loss' that [the landlord] suffered from the fire."  *Id.*  Importantly, however, *Thomas* is an unpublished memorandum and therefore not binding upon us.  *See* Pa.R.A.P. 126(b) (stating that an unpublished non-precedential memorandum decision of the Superior Court filed after May 1, 2019, may be cited for its persuasive value).

[7] The Policy between Mutual Benefit and Landlord is not contained in the record.  However, we presume it does not name Tenants as co-insureds, or waive subrogation, in accordance with our standard of review.  *See Klar v. Dairy Farmers of America, Inc.*, 268 A.3d 1115, 1121 (Pa. Super. 2021) ("[T]he same principles apply to a judgment on the pleadings as apply to a preliminary objection in the nature of a demurrer: All material facts set forth
*(Footnote Continued Next Page)*

> [L]eases are in the nature of contracts and are, thus, controlled by principles of contract law, including the well settled rules of interpretation and construction. As in the case of other written contracts, the purpose in interpreting a lease is to ascertain the intention of the parties, and such intention is to be gleaned from the language of the lease. Such intention is not to be determined merely by reference to a single word or phrase, but rather by giving every part of the document its fair and legitimate meaning.

***Fraport Pittsburgh, Inc. v. Allegheny County Airport Authority***, 296 A.3d 9, 15 (Pa. Super. 2023) (internal citations omitted).

The month-to-month lease in the case *sub judice* contained the following provisions, in relevant part:

> This Lease Agreement ("Lease") is entered by and between Michael Sachs [*sic*] ("Landlord") and Cortney Koser, Kyleah Koser,[8] and Mickael Abels ("Tenant") on 3-9-20 (Date). Landlord

---

in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for purpose of this review.") (citation omitted); Mutual Benefit's Complaint at ¶ 7 (Mutual Benefit's stating that Landlord procured the Policy for the Subject Property and specifying the policy period and coverage limits, but making no mention that Tenants were expressly named as co-insureds in the Policy or that Mutual Benefit waived any right to subrogation). ***See also*** TCO at 7 (noting that "it is not suggested that the [P]olicy mentioned [T]enants or that parol evidence would be of benefit in construing or interpreting the lease"); Tenants' Brief at 11 n.3 ("No party suggested below or to this Court that the language of the [P]olicy is relevant to the outcome of the case at bar.").

[8] Based on the record before us, it is unclear who 'Kyleah Koser' is. However, while her name is listed at the beginning of the lease, she did not sign or initial the lease agreement, and both Tenants and Mutual Benefit represent that the lease was only entered into between Cortney Koser, Mickael Abels, and Landlord. ***See*** Complaint at ¶ 6 ("At all times relevant to this lawsuit, … Cortney Koser and Michael [*sic*] Abels … leased the Subject Property from [Landlord]."); Tenants' Answer with New Matter and Counterclaim at ¶ 6 ("It is admitted that Answering Defendants leased the [Subject Property] from [Landlord]."); Tenants' Motion for Judgment on the Pleadings at ¶ 7 (stating that on or about March 9, 2020, Cortney Koser and Mickael Abels entered into

*(Footnote Continued Next Page)*

and Tenant may collectively be referred to as the "Parties." This Lease creates joint and several liabilities in the case of multiple Tenants. The Parties agree as follows:

**PREMISES:** Landlord hereby leases the premises located at 256 N. 21st Street … in the City of Camp Hill…, State of Pennsylvania, (the "Premises") to Tenant.

\*\*\*

**SECURITY DEPOSIT:** At the signing of this Lease, Tenant shall deposit with Landlord in trust, a security deposit of $540 as security[9] for the performance by Tenant of the terms under this Lease and for any damages caused by Tenant, Tenant's family, agents and visitors to the Premises during the term of this Lease. Landlord may use part or all of the security deposit to repair any damage to the Premises caused by Tenant, Tenant's family, agents and visitors to the Premises. However, Landlord is not just limited to the security deposit amount and Tenant remains liable for any balance. Tenant shall not apply or deduct any portion of any security deposit from the last or any month's rent. Tenant shall not use or apply any such security deposit at any time in lieu of payment of rent. If Tenant breaches any terms or conditions of this Lease, Tenant shall forfeit any deposit as permitted by law.

\*\*\*

**POSSESSION AND SURRENDER OF PREMISES:** Tenant shall be entitled to possession of the Premises on the 1st day of the Lease Term. At the expiration of the Lease, Tenant shall peaceably surrender the Premises to the Landlord or Landlord's agent in good condition, as it was at the commencement of the Lease, reasonable wear and tear excepted.

\*\*\*

**DANGEROUS MATERIALS:** Tenant shall not keep or have on or around the Premises any item of a dangerous, flammable or

---

a lease agreement with Landlord); Mutual Benefit's Reply to Tenants' Motion for Judgment on the Pleadings at ¶ 7 (admitting that Landlord leased the property to Cortney Koser and Mickael Abels).

9 The lease also contains a handwritten note in this section that reads "$20 per cat." Lease at 1.

explosive nature that might unreasonably increase the risk of fire or explosion on or around the Premises or that might be considered hazardous by any responsible insurance company.

\*\*\*

**DAMAGES TO PREMISES:** If the Premises or part of the Premises are damaged or destroyed by fire or other casualty not due to Tenant's negligence, the rent will be abated during the time that the Premises are uninhabitable.  If Landlord decides not to repair or rebuild the Premises, then this Lease shall terminate and the rent shall be prorated up to the time of the damage.  Any unearned rent paid in advance shall be refunded to Tenant.

**MAINTENANCE AND REPAIR:** Tenant will, at Tenant's sole expense, keep and maintain the Premises in good, clean and sanitary condition and repair during the term of this Lease and any renewal thereof.  Tenant shall be responsible to make all repairs to the Premises, fixtures, appliances and equipment therein that may have been damaged by Tenant's misuse, waste or neglect, or that of the Tenant's family, agents or visitors. Tenant agrees that no painting will be done on or about the Premises without the prior written consent of Landlord.  Tenant shall promptly notify Landlord of any damage, defect or destruction of the Premises or in the event of the failure of any of the appliances or equipment.  Landlord will use its best efforts to repair or replace any such damaged or defective areas, appliances or equipment.

\*\*\*

**INSURANCE:** Landlord and Tenant shall each be responsible to maintain appropriate insurance for their respective interests in the Premises and property located on the Premises.  Tenant understands that Landlord will not provide any insurance coverage for Tenant's property.  Landlord will not be responsible for any loss of Tenant's property whether by theft, fire, riots, strikes, acts of God or otherwise.  Landlord encourages Tenant to obtain renter's insurance or other similar coverage to protect against risk of loss.

\*\*\*

**ENTIRE AGREEMENT:** This Lease constitutes the entire Agreement between the Parties and supersedes any prior understanding or representation of any kind preceding the date of

this Agreement. There are no other promises, conditions, understandings or other Agreements, whether oral or written, relating to the subject matter of this Lease. This Lease may be modified in writing and must be signed by both Landlord and Tenant.

***

**INDEMNIFICATION:** To the extent permitted by law, Tenant will indemnify and hold Landlord and Landlord's property, including the Premises, free and harmless from any liability for losses, claims, injury to or death of any person, including Tenant, or for damage to property arising from Tenant using and occupying the Premises or from the acts or omissions of any person or persons, including Tenant, in or about the Premises with Tenant's express or implied consent, except Landlord's act or negligence.

Lease at 1, 2, 3, 4, 5.

On appeal, Mutual Benefit argues that the lease does not create a reasonable expectation that Tenants will be implied co-insureds under the Policy. Mutual Benefit's Brief at 18. To begin, it contends that Pennsylvania does not follow the anti-subrogation approach. While it concedes that the lease requires Landlord to maintain fire insurance on the Premises, it insists that the inquiry does not end there. **Id.** Mutual Benefit posits that, "[i]f the mere existence of such a provision were the end of the inquiry, Pennsylvania would fall into the category of states that apply the bright-line anti-subrogation approach…." **Id.** (citations omitted); **see also** footnote 4, **supra** (quoting **Joella** and describing the anti-subrogation approach as espousing that, "unless the lease agreement expressly requires a tenant to procure fire insurance, the tenant is an implied co-insured of the landlord's policy"). Instead, Mutual Benefit says, "even if the landlord is required by the lease to insure the property, Pennsylvania courts must perform a case-by-case inquiry

- 17 -

into the reasonable expectations of the parties about whether the tenant would be an implied co-insured under the landlord's insurance policy, based upon the language of the lease agreement itself." Mutual Benefit's Brief at 18-19 (citing *Joella*, *supra*).

Next, unlike the lease in *Joella*, Mutual Benefit argues that the lease in this matter required both parties to maintain insurance for their respective interests. It contends that the *Joella* lease "*required* the landlord to insure the building, but only *permitted* the tenant to insure her personal property. In contrast, the [l]ease between [Landlord] and … [Tenants] *requires* both the landlord and the tenants to each maintain insurance for two separate interests: the [P]remises, and the property located therein." *Id.* at 19-20 (citations omitted; emphasis in original). *See also* Lease at 4 ("Landlord and Tenant shall each be responsible to maintain appropriate insurance for their respective interests in the Premises and property located on the Premises. Tenant understands that Landlord will not provide any insurance coverage for Tenant's property. Landlord will not be responsible for any loss of Tenant's property whether by theft, fire, riots, strikes, acts of God or otherwise. Landlord encourages Tenant to obtain renter's insurance or other similar coverage to protect against risk of loss."). Mutual Benefit reads the lease's 'Insurance' provision to require Tenants to purchase liability insurance for damage to the Premises, explaining:

> [T]he language of the lease requires each party to insure their respective financial interests in both the [P]remises and the property, by purchasing "appropriate insurance."

> The use of the phrases "respective interests" and "appropriate insurance" contemplate that [L]andlord and Tenants have differing financial interests in the [P]remises and the personal property inside it, which may require them to purchase different kinds of insurance. As … Tenants do not own the building, their financial interest in the [P]remises requires them to purchase liability insurance, and their financial interest in the personal property requires them to purchase first-party property insurance.

> [L]andlord's financial interest in the [P]remises and the property requires him to purchase first-party property damage insurance for … both the building and its contents, as well as liability insurance for the [P]remises.

Mutual Benefit's Reply Brief at 6-7 (emphasis in original). Because the lease affirmatively imposes insurance obligations on Tenants, Mutual Benefit asserts that this case is more akin to the facts of **Remy**, where the court determined that the tenant was not an implied co-insured. **See** Mutual Benefit's Brief at 20-21.

Finally, Mutual Benefit advances that, based on other provisions in the lease, Tenants could not have reasonably expected that Landlord's recovery would be limited to the Policy in the case of damage to the Premises. **Id.** at 22. Mutual Benefit avers that the lease in this case "contains more than a 'general liability for negligence clause' such as was included in the **Joella** lease." **Id.** at 21. In support, Mutual Benefit points to multiple provisions in the lease that purportedly set forth that Tenants will be liable for any damage they cause to the Subject Property:

> The "Security Deposit" paragraph of the lease requires the tenant to make a $540 security deposit, but explicitly states that … "Tenant remains liable for any balance." The "Maintenance and Repair" paragraph requires the tenant to "make all repairs to the Premise[s], fixtures, appliances and equipment therein that may have been damaged by [T]enant's misuse, waste or neglect…."

- 19 -

The lease further requires that … Tenants "indemnify and hold Landlord and Landlord's property, including the Premises," free from liability or damage to [*sic*] property arising from … Tenants' acts or omissions.

Additionally, the lease explicitly prohibits the use of flammable materials, and specifically provides that if the [P]remises are damaged or destroyed by fire, rent will only be abated if the fire was "not due to Tenant's negligence."

These provisions of the [l]ease, read together, do not create any reasonable expectation on the part of … Tenants that [Landlord's] recovery in the case of damage to the [Premises] would be limited to the [P]olicy. Rather, the most reasonable and natural reading of the lease is that [Landlord] could seek to recover from … Tenants for any damage to the [Premises] arising from their occupancy of the [Premises], and that … Tenants were responsible for maintaining insurance to protect their interests — both in the [P]remises and in their personal property.

*Id.* at 21-23.

After careful review and much deliberation, we determine that no relief is due. Initially, we read the lease to require Landlord to insure the Premises and his personal property located on the Premises, and for Tenants to insure their personal property located on the Premises. We reject Mutual Benefit's argument that Tenants were obligated to maintain liability insurance for damage to the Premises. As Tenants discern:

[I]n a strained construction of the lease, [Mutual Benefit] argues that because the lease requires the parties to insure "their respective interests in the Premises <u>and</u> property located on the Premises," the lease somehow required [Tenants] to insure the building. This argument entirely disregards the fact that the parties were to insure "their respective interests." [Tenants] had *no interest* in the real property to insure, and obviously were not required to insure the building.

Apparently recognizing this, [Mutual Benefit] strains further, contorting the term "interest" to mean [Tenants'] "interest" in protecting themselves from liability to [L]andlord in the event they

- 20 -

caused damage to [L]andlord's property. Of course the "interest" to be insured is the *premises* and *property*, and not the desire to protect oneself from liability. … [T]his clause is only reasonably read to require first party property insurance, and cannot be construed to somehow actually require liability insurance.

Tenants' Brief at 20-21 (emphasis in original). We agree.

Although the lease obligated Tenants to insure their personal property and for Landlord to insure the Premises and his personal property, Mutual Benefit is correct that the inquiry does not end here in our case-by-case jurisdiction. Reading the lease in its entirety, we must determine if it is reasonable for Tenants to believe that Landlord would look only to his Policy for compensation for losses caused by the fire. While this is a close question, we conclude that such an expectation is reasonable.

We reiterate that, in **Joella**, the **Joella** Court endorsed the view that,

[i]f, under the lease or by some other commitment, the landlord has communicated to the tenant an express or implied agreement to maintain fire insurance on the leased premises, ***absent some compelling provision to the contrary***, the court may properly conclude that, ***notwithstanding a general "surrender in good condition" or "liability for negligence" clause in the lease***, their reasonable expectation was that the landlord would look only to the policy, and not to the tenant, for compensation for fire loss covered by the policy. That expectation would constitute an implied commitment in the lease to relieve the tenant of liability to the extent of the policy coverage and it, too, would therefore preclude a subrogation claim.

**Joella**, 221 A.3d at 680 (quoting trial court's opinion reliance on **Rausch**, *supra*; emphasis added). As a result, despite the lease in **Joella** stating that the tenant 'shall not negligently damage the premises,' the **Joella** Court still determined that the lease created a reasonable expectation that the landlord

- 21 -

would look only to his insurance policy for compensation for covered fire loss. *Id.* at 680-81.

In this case, we deem the other provisions in the lease between Landlord and Tenants akin to the general "surrender in good condition" or "liability for negligence" clauses referenced in *Joella*. While some provisions in the lease do generally impose liability on Tenants for damages they cause to the Premises, none of the provisions are compelling enough to us to override Tenants' expectation that — since Landlord had agreed to be responsible for maintaining insurance on the Premises and his personal property — they would be protected by the Landlord's Policy in the event a candle they left burning started a fire, causing extensive damage to the Premises.

Based on the foregoing, we conclude that the trial court properly granted Tenants' motion for judgment on the pleadings. Landlord agreed to provide fire insurance for the Premises and his personal property. Under the lease, it was reasonable for Tenants to expect that Landlord would look only to the Policy for compensation for fire loss covered by the Policy. We therefore concur with the trial court that Tenants are implied co-insureds under the Policy, and Mutual Benefit is precluded from presenting a subrogation claim against them.

Order affirmed.

President Judge Panella joins this opinion.

Judge McCaffery concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>07/03/2024</u>